UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X

JOSEFINA BENITEZ, ZION BRERETON, and ALICIA LEARMONT, *on behalf of themselves and all others similarly situated,*

                            Plaintiffs,

        -against-

VALENTINO U.S.A., INC.,

                    Defendant.
--------------------------------------------------------------------X

Docket No:

**COMPLAINT**

**JURY TRIAL DEMANDED**

**Collective Action and Class Action Complaint**

       JOSEFINA BENITEZ, ZION BRERETON, and ALICIA LEARMONT (collectively, "Plaintiffs"), by and through their attorneys, JOSEPH & NORINSBERG, LLC, and GODDARD LAW, PLLC, as and for their Complaint against VALENTINO U.S.A., INC. ("Valentino" or "Defendant"), allege upon personal knowledge as to themselves, and upon information and belief as to all other matters, as follows:

## NATURE OF CASE

       1.     Plaintiffs bring this action on their own behalf and on behalf of similarly situated Plaintiffs for Defendant's systemic and continuous violations of: (i) the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq*. ("FLSA"); (ii) the New York Labor Law ("Labor Law" or "NYLL"); (iii) the requirement that employees furnish employees with an accurate wage notice at the time of hiring, and on an annual basis, containing specific categories of information under the NYLL § 195(1), codified as the New York Wage Theft Prevention Act (the "NYWTPA"); (iv) the requirement that employees furnish employees with an accurate wage statement with each payment, containing specific categories of information under the NYLL § 195(3); and (v) any other cause(s) of action that can be inferred from the facts set forth herein.

2.      Plaintiff Alicia Learmont additionally brings claims against Defendant for, inter alia: (a) failure to accommodate and retaliation under the New York City Human Rights Law ("NYCHRL"); (b) retaliation and unlawful discharge under the Family and Medical Leave Act ("FMLA") 29 U.S.C. §§ 2601-2654; and (c) retaliation for disclosing wage violations under NYLL § 215.

## PRELIMINARY STATEMENT

3.      Valentino is an upscale fashion company that employed approximately 300 employees in New York, and approximately 800 employees in the United States, during the statutory period.

4.      During the course of the past six years, Valentino willfully and knowingly underpaid a large portion of its employees, by failing to pay them overtime wages, at the mandatory, statutory rate. Indeed, to circumvent Federal and State laws, Valentino deliberately developed two practices that would result in its employees being systematically denied overtime wages.  *First,* Valentino willfully misclassified most of its workforce as "exempt" and claimed that they were not eligible to receive overtime premiums at one-and-one-half-times the regular rate of pay, when in fact, most of these employees were in fact "non-exempt" employees who should have received overtime wages.  *Second,* Valentino willfully and knowingly mischaracterized many of its employees as "independent contractors" when, in fact, they were "employees" as a matter of law, and should have received overtime wages.

5.      Plaintiff Alicia Learmont ("Ms. Learmont") joined Valentino's Human Resources ("H.R.") team in 2015 and learned that Valentino *knew* that its pay policies were in violation of Federal and State law, but nonetheless failed to remedy its classifications and pay its workers

lawful wages. Ms. Learmont took exception to this unlawful policy and that Valentino insisted remedy its illegal pay practices.

6.      Ms. Learmont was shocked when she learned how widespread Valentino's misclassifications were.  Notably, Plaintiff Josefina Benitez ("Ms. Benitez"), who worked in Valentino's H.R. office, was classified as "exempt" for most of her tenure within Valentino, even though there was no basis for this exemption. As a result of this self-serving misclassification, Ms. Benitez was denied overtime wages, although she worked approximately 20 hours of overtime each week.

7.      Likewise, Plaintiff Zion Brereton ("Ms. Brereton"), who worked in the Valentino showroom, was misclassified as an "independent contractor," when in fact she was actually an employee. As a result of this self-serving misclassification, Ms. Brereton was denied overtime wages, although she worked approximately 10 hours of overtime each week.

8.      After years of these unlawful practices, Valentino finally remedied its violations, and reclassified its workforce in accordance with Federal and State law. However, despite making these changes – and thereby acknowledging its past flagrant violations – Valentino failed to offer back wages to its workers for the time that they had been deliberately misclassified.

9.      Additionally, in retaliation for Learmont being a whistleblower, and for her taking FMLA leave, Valentino unlawfully terminated her employment. Plainly, Valentino wanted to continue violating the law with impunity, and Ms. Learmont's insistence on compliance motivated Valentino to unlawfully terminate her employment.

10.      Plaintiffs now bring this action on behalf of themselves, and all others similarly situated, both current and former employees throughout the Unites States, pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., and specifically the collective action

provision of the FLSA, 29 U.S.C. § 216(b), to remedy Valentino's violations of the wage and hour provisions of the FLSA that have deprived Plaintiffs, and others similarly situated throughout the country, of their lawful wages.

11.    Plaintiffs also bring this action on behalf of themselves and a class of similarly situated current and former employees of Valentino in New York, pursuant to Fed. R. Civ. P. 23, for violations of New York Labor Law ("NYLL") § 195 and 12 N.Y. Comp. Codes R. & Regs. ("NYCRR") § 146-2.2 and 2.3.

## JURISDICTION AND VENUE

12.    The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 29 U.S.C. § 201, *et. seq.*

13.    The Court's supplemental jurisdiction is invoked pursuant to 28 U.S.C. § 1367(a), which confers supplemental jurisdiction over all non-federal claims arising from a common nucleus of operative facts, such that they form part of the same case or controversy under Article III of the United States Constitution.

14.    Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b) (2), as all actions comprising the claims for relief occurred within this judicial district, and pursuant to 28 U.S.C. § 1391(b) (1), as the Defendant resides within this judicial district.

## DEMAND FOR A JURY TRIAL

15.    Plaintiffs respectfully demand a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

*Plaintiff Josefina Benitez*

16.     At all relevant times herein, Josefina Benitez ("Ms. Benitez") was and is a resident of the State of New York.

17.     At all times relevant herein, Ms. Benitez was an "employee" of Defendant within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

18.     At all relevant times herein, Ms. Benitez was an "employee" entitled to protection as defined by the NYLL and NYWTPA.

19.     Pursuant to 29 U.S.C. §216(b) of the FLSA, Ms. Benitez's written consent to become a party plaintiff is attached hereto. (Exhibit A).

*Plaintiff Zion Brereton*

20.     At all relevant times herein, Zion Brereton ("Ms. Brereton") was and is a resident of the State of New York.

21.     At all times relevant herein, Ms. Brereton was an "employee" of Defendant within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

22.     At all relevant times herein, Ms. Brereton was an "employee" entitled to protection as defined by the NYLL and NYWTPA.

*Plaintiff Alicia Learmont*

23.     At all relevant times herein, Alicia Learmont ("Ms. Learmont") was and is a resident of the State of New Jersey.

24.     Ms. Learmont was an individual with a "disability" within the meaning of the NYCHRL, as set forth below.

25.     At all times relevant herein, Ms. Learmont was an "employee" of Defendant within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

26.     At all relevant times herein, Ms. Learmont was an "employee" entitled to protection as defined by the NYLL, NYWTPA, NYCHRL, and FMLA.

***Defendant Valentino U.S.A., Inc.***

27.     At all relevant times herein, Valentino U.S.A., Inc. ("Valentino" of "Defendant"), was and is a foreign corporation duly authorized to conduct business in the State of New York.

28.     Upon information and belief, Valentino has a principal place of business located at 11 West 42nd Street, in the County, City, and State of New York.

29.     At all relevant times, Defendant Valentino employed more than 100 employees.

30.     At all relevant times, Defendant Valentino controlled the terms and conditions of Plaintiffs' employment, and was and is an "employer" within the meaning of the FLSA, NYLL, NYCHRL and FMLA.

31.     At all times relevant herein, Defendant Valentino was an "employer" under the FLSA, 29 U.S.C. § 203(d), subject to the provisions of 29 U.S.C. §§ 201, *etseq*. Further, at all times relevant to this action, Defendant was engaged in interstate commerce or in the production of goods for commerce, as defined by the FLSA, and Defendant's qualifying annual business exceeds $500,000.00.

## <u>COLLECTIVE ACTION ALLEGATIONS</u>

32.     Plaintiff Josefina Benitez brings this action pursuant to 29 U.S.C. § 216(b) on behalf of a putative collective action defined to include:

> All employees who were employed by Valentino throughout the United States, during the relevant statutory period, who were misclassified as exempt, and denied overtime wages at the mandatory statutory rate for all hours over 40 in a workweek (hereinafter, the "FLSA Plaintiffs").

33.     With respect to the claims set forth in the FLSA action, conditional certification under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The class of employees on behalf of whom Plaintiff Benitez bring this collective action are similarly situated because: (a) they were or are subject to the same or similar unlawful practices, policy, or plan – namely of being misclassified as "exempt" and denied overtime wages at a rate of one-and-one-half times their regular rate; (b) their claims are based upon the same factual and legal theories; and (c) the employment relationship between Defendant and every putative Class member is exactly the same and differs only by name, location, and rate of pay.

34.     Plaintiff Benitez estimates that the FLSA Class, including both current and former employees throughout the United States, over the relevant period, will include several hundred members. The precise number of FLSA Class members should be readily available from a review of Defendant's personnel, scheduling, time and payroll records, and from input received from the collective class members as part of the notice and "opt-in" process provided by 29 U.S.C. § 216(b).

35.     Plaintiff Benitezs entitlement to overtime pay would be similar to that of the other FLSA Class members, and their claim would depend on identical factual and legal questions, including but not limited to:

      a.   Whether the Plaintiffs were misclassified as "exempt";

      b.   Whether the Plaintiffs were denied overtime wages at the mandatory statutory rate for all hours over 40 in a workweek;

      c.   Whether Defendant's violations were willful; and

      d.   Whether Defendant should be required to pay compensatory damages, attorneys' fees, costs, and interest for violating the FLSA.

**RULE 23 CLASS ACTION ALLEGATIONS**

36.    Plaintiffs Josefina Benitez and Zion Brereton bring the action pursuant to Federal Rule of Civil Procedure 23(b)(3) and (c)(4) on behalf of a putative class defined to include:

> Current and former employees of Defendant who performed work for Defendant during the statutory period, within the State of New York, and who were: (1) misclassified as "exempt," and denied overtime wages at the mandatory statutory rate for all hours over 40 in a workweek; (2) misclassified as an "independent contractor" and denied overtime wages at the mandatory statutory rate for all hours over 40 in a workweek; (3) denied accurate and/or complete pay wage statements on each payday containing the information required by N.Y. Lab. Law § 195(3); and/or 4) denied accurate and/or complete wage notices upon hiring, and annually thereafter, containing the information required by N.Y. Lab. Law § 195(1).

37.    *Numerosity:* The members of the New York Class are so numerous that joinder of all members in the case would be impracticable. Plaintiffs reasonably estimate that there are over 300 Class members who reside and work in New York. The precise number of Class members should be readily available from a review of Defendant's personnel and payroll records.

38.    *Commonality/Predominance:* There is a well-defined community of interest among the New York Class members and common questions of both law and fact predominate in the action over any questions affecting individual members. These common legal and factual questions include, but are not limited to, the following:

> a.   Whether the Plaintiffs were misclassified as "independent contractors";
>
> b.   Whether the Plaintiffs were misclassified as "exempt";
>
> c.   Whether Defendant failed to pay Plaintiffs and Class Members the mandatory statutory rate of one-and-one-half times the regular hourly rate for all hours worked in excess of 40 in a workweek;
>
> d.   Whether Valentino's pay practices were in violation of the NYLL;

e.  Whether Defendant violated the NYWTPA by failing to provide Plaintiffs and Class Members with sufficiently detailed wage statements with each payment, as required by NYLL § 195(3);

f.  Whether Defendant violated the NYWTPA by failing to provide Plaintiffs and Class Members with a written statement upon hiring, and annually, as required by NYLL § 195(1);

g.  Whether Defendant should be required to pay compensatory damages, attorneys' fees, costs, and interest for violating the NYLL; and

h.  Whether Defendant's violations were willful.

39.    *Typicality:* Plaintiffs' claims are typical of those of the New York Class in that Plaintiffs and all other members suffered damages as a direct and proximate result of Defendant's common and systemic payroll policies and practices. Plaintiffs' claims arise from the same policies, practices, and course of conduct as all other New York Class members' claims, and Plaintiffs' legal theories are based on the same legal theories as all other New York Class members, as detailed above.

40.    *Adequacy:* Plaintiffs will fully and adequately protect the interests of the New York Class and Plaintiffs have retained counsel who are qualified and experienced in the litigation of wage-and-hour class actions. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the New York Class.

41.    *Superiority:* A class action is superior to other available methods for the fair and efficient adjudication of the controversy, because, *inter alia*, it is not economically feasible for the New York Class members to prosecute individual actions on their own, given the relatively small amount of damages at stake for each individual, along with the fear of reprisal by their employer.

42.    The case will be manageable as a class action because Defendant has payroll systems that will allow the wage-and-hour facts and damages issues in the case to be resolved

with relative ease.  Because the elements of Rule 23(b)(3), or in the alternative (c)(4), are satisfied in the case, class certification is appropriate.

## FACTUAL ALLEGATIONS

### Alicia Learmont

43.     Plaintiff Learmont began working for Defendant Valentino on or about June 2015, as a Senior Manager of Payroll & Benefits. Plaintiff maintained this position until she was unlawfully terminated on or about October 2019.

44.     Ms. Learmont worked out of Valentino's corporate office, located at 11 West 42nd Street, 26th Floor, New York, New York.

45.     When Ms. Learmont was first hired, she immediately began working with Valentino on several important projects related to payroll, benefits, and bonuses for all Valentino employees throughout the United States.

***Ms. Learmont Repeatedly Informs Valentino That
Its Pay Policies Are Unlawful and Must Be Remedied.***

46.     Soon after being hired, Ms. Learmont advised Valentino that many of its pay policies violated the law and had to remedied without delay. Specifically, during the very first payroll process, Ms. Learmont noticed that all Valentino employees were classified as salaried. She questioned her supervisor whether these "salaried" employees were eligible to receive overtime wages. In response, she was told by her supervisor that the only employees eligible to earn overtime wages were outlet employees, which at the time was approximately 10 employees. The payroll at the time had approximately 300 employees. This flagrant, widespread violation shocked Ms. Learmont.

47.     Ms. Learmont was also asked to oversee the "freelance employees" who, in accordance with Valentino's policy, received a W-9 form and an Independent Contractor

agreement upon hiring, and were then denied overtime wages on grounds of having been classified as "independent contractors."

48.     Plaintiff Zion Brereton was one of the individuals who was to receive the W-9 form and Independent Contractor agreement. Ms. Learmont was concerned about classifying Ms. Brereton as an "independent contractor," since she knew that Ms. Brereton would be working to support Valentino's Sample Room – an essential role – and therefore, would be using Valentino's computers, receiving direction from the Sample Manager, and working according to the schedule set by her manager. Thus, Ms. Brereton would be considered an "employee" under the law; not an "independent contractor."

49.     Ms. Learmont immediately notified Chauncey Hill ("Hill"), Director of Human Resources at the time, that Ms. Brereton's classification was incorrect. In response, Hill advised her simply that that was Valentino's policy. When Ms. Learmont insisted that this classification was incorrect, Hill claimed that he was in no position to make the required change.

50.     Subsequently, on or about 2015, Valentino hired a new Vice President of H.R., Rebecca Schneider ("Schneider"). Ms. Learmont promptly notified her about the misclassification errors pertaining to "exempt" employees, as well as "independent contractors," and stated that this matter must be remedied without delay. Schneider ignored Ms. Learmont's concerns, and directed her to concentrate on other payroll and benefit matters.

51.     In December 2015, Valentino finally decided to correct its mistake with respect to the "independent contractors," and asked Ms. Learmont to assist in this transition. Ms. Learmont again asked Schneider about remedying the misclassification of the "exempt" employees and was once again ignored.

52.     In December 2016, a new head of H.R. joined Valentino. A year had passed since Valentino had fixed the "independent contractor" misclassification error, but it still refused to remedy the misclassification of the "exempt" employees, which impacted a significant number of Valentino employees. Accordingly, Ms. Learmont advised the new H.R. director right away of the error. The new H.R. director made inquiries to Valentino's management, and once again, Valentino refused to comply with the law, and insisted on allowing the "misclassification" error to remain. The excuse given was that Valentino was waiting for its new CEO to take charge. However, this proffered reason was patently false, since when the new CEO joined Valentino, on or about June 2017, the misclassification matter was not remedied.

53.     Ms. Learmont was an exemplary worker who made great strides in organizing and upgrading Valentino's H.R. functions. Moreover, to the extent possible, Ms. Learmont brought Valentino into compliance in the areas within her control, which included, inter alia:  a)  updating the benefit summary plan descriptions to comply with ACA waiting rules, while at the same time ensuring all new hires were compliant with the wait rules; b) implementing a COBRA administrator to ensure notices were sent timely and in compliance with Federal law; c) revising documents for 401(k) benefit plans to ensure the plan operated in accordance with plan documents; and d) implementing an ACA compliance reporting and filing.

***Theresa Fortunato Retaliates Against Ms. Learmont for Reporting
Valentino's Errors, and Creates a Hostile Work Environment.***

54.     On or about March 2019, Theresa Fortunato ("Fortunato") assumed the role of Vice President of Human Resources, and became Ms. Learmont's direct supervisor.

55.     Ms. Learmont stated her concerns regarding the misclassification of the "exempt" workers to Fortunato, as she had done in the past when there was a new hire in H.R. However,

instead of addressing Valentino's ongoing violation, Fortunato became hostile, and belittled Ms. Learmont personally, and also criticized her management role prior to Fortunato's arrival.

56.     Thereafter, Fortunato overwhelmed Ms. Learmont with an excessive unrealistic workload.   When Ms. Learmont attempted to communicate her concerns to Fortunato, Fortunato only criticized her further.

57.     Upon information and belief, Fortunato mistreated Ms. Learmont in retaliation for Ms. Learmont's repeated insistence that Valentino remedy its payroll violations. Fortunato seemed to have a specific animus toward Ms. Learmont.

58.     The ongoing hostility and animus caused Ms. Learmont's anxiety to spike, and her health began to decline.

***Valentino Fails to Engage in an Interactive Process, and Unlawfully Terminates Ms. Learmont in Retaliation for Taking FMLA Leave.***

59.     On or about May 2019, Ms. Learmont's physician directed her to work three days a week from home, since he had prescribed a new medication and wanted to give Ms. Learmont time to adjust to the new medication. Additionally, Ms. Learmont's physician wanted her to immediately find a therapist and to see the therapist several times a week.

60.     In compliance with her physician's directives, Ms. Learmont applied for FMLA leave.

61.     Ms. Learmont notified Fortunato of her need to work from home three days a week. However, Fortunato willfully failed to accommodate Ms. Learmont. She continued to request that Ms. Learmont come into the office to work on projects, and insisted that Ms. Learmont participate in meetings regarding various topics and projects. Further, Fortunato increased Ms. Learmont's workload with unrealistic projects and deadlines. The unrelenting work obligations, and

Fortunato's accompanying hostility, caused Ms. Learmont to develop multiple ailments including but not limited to severe tension headaches, heart palpitations and thoughts of suicide.

62. When Ms. Learmont returned to her doctor on July 5, 2019, her doctor put her on leave for three months, until October 1, 2019.

63. While Ms. Learmont was on leave, Valentino hired a capable temporary employee to manage her duties. As a result, the H.R. work continued without incident, and Valentino did not suffer any hardship.

64. In the interim, the temporary employee disclosed to Ms. Learmont that Fortunato spoke of Ms. Learmont with hostility, and was planning to reduce Ms. Learmont's duties and responsibilities when she returned to work after her FMLA leave.

65. Upon information and belief, Fortunato intended to demote, or discharge altogether Ms. Learmont in retaliation for her having been a "whistleblower" with respect to Valentino's numerous payroll violations, and for having taken FMLA leave.

66. In September 2019, Ms. Learmont's doctor directed her to extend her leave for another few months. When Ms. Learmont communicated this directive to Fortunato, there was no response. Fortunato did not inquire about Ms. Learmont's condition, or engage in an interactive process.

67. Instead, eight days later, on October 2, 2019, Fortunato sent Ms. Learmont an email terminating her employment. Fortunato claimed, falsely, that this decision was based on an "undue hardship." However, this was plainly pretextual, as Valentino had a temporary employee who was handling all of Ms. Learmont's duties.

68.     In fact, Ms. Learmont was purposefully and unlawfully terminated in retaliation for requesting reasonable accommodations and taking FMLA leave, in violation of the NYCHRL and FMLA.

69.     Additionally, Ms. Learmont was terminated because she repeatedly insisted that Valentino follow the law in all respects, and Valentino wanted to continue underpaying its employees and violating the law with impunity.

70.     Ms. Learmont suffered damages as a result of Valentino's retaliatory conduct, including but not limited to, compensatory damages, punitive damages, liquidated damages, costs and attorneys' fees.

## Josefina Benitez

71.     Plaintiff Benitez began working for Defendant as a Senior Payroll Benefits Administrator on July 11, 2016, and maintained this position until she was terminated on or about October 4, 2019.

72.     Ms. Benitez worked out of Valentino's corporate office, located at 11 West 42nd Street, 26th Floor, New York, New York.

73.     Ms. Benitez processed payroll and benefits for all Valentino workers in the United States, as instructed by her supervisor.

74.     Ms. Benitez routinely worked approximately 60 hours per week.

75.     Valentino wrongfully Ms. Benitez classified as "exempt," and therefore, denied her overtime wages. Indeed, Ms. Benitez was paid on a salary basis without receiving any overtime payments whatsoever.

76.     Valentino knew, at all relevant times, that Ms. Benitez was not exempt, and nonetheless maintained this fiction in order to avoid paying her lawful wages.

77.     As an H.R. administrator, Ms. Benitez's primary duties did not include work requiring the exercise of discretion or independent judgment with respect to matters of significance. Additionally, Ms. Benitez never, inter alia: i) hired or terminated employees; ii) promoted or demoted employees; iii) handled employee grievances and disciplined employees; iv) determined employees' pay rates; v) determined employees' work schedules; vi) supervised two or more full-time employees or the equivalent thereof; or vii) managed any department or subdivision of Defendant's business. Likewise, Ms. Benitez's duties never required knowledge of an advanced type in a field of service or learning customarily acquired by a prolonged course of specialized intellectual instruction and study. Accordingly, Ms. Benitez was not exempt from the overtime provisions of the FLSA or the NYLL.

78.     Valentino's self-serving misclassification was not limited to Ms. Benitez alone. Rather, this was Defendant's pattern and practice. Valentino deliberately misclassified a significant portion of its workforce as "exempt" in order to evade paying overtime wages to its employees.

79.     Indeed, upon information and belief, a majority of employees on Valentino's payroll were categorized as salary workers who were "exempt" and denied overtime pay. However, a majority of these employees were, in fact, office workers, retail workers, and salespersons who were *not* exempt from overtime pay.

80.     In May 2019, Valentino finally acknowledged its classification error, and reclassified Ms. Benitez as "non-exempt" and made her eligible for overtime wages. (Exhibit B). However, even once Valentino corrected its classification error, it still willfully failed to compensate Ms. Benitez for the back wages she was owed as a result of having been misclassified.

Similarly, Valentino did not compensate Ms. Benitez for the 401K benefits she had lost as a result of having been misclassified as "exempt."

81.     Defendant also failed to provide Ms. Benitez with a wage notice or accurate paystubs in compliance with NYLL § 195(3).

82.     Specifically, Valentino did not provide Ms. Benitez with a paystub specifying her hourly rate of pay, the regular and overtime hours she worked, and all of the other information required under NYLL § 195. Since Ms. Benitez was misclassified as exempt, her paystubs were necessarily inaccurate and in violation of the NYWTPA.

83.     Likewise, Valentino did not provide Ms. Benitez with a notice upon hiring, and annually thereafter specifying her rate of pay, the basis of pay, the allowances (if any) claimed against the minimum wage (e.g., tips, meals, lodging, etc.), or the identification of the regular pay day. Since Ms. Benitez was misclassified as exempt, all wage notices were necessarily inaccurate and in violation of the NYWTPA.

84.     Defendant's failures to pay proper wages in a timely manner were made in bad faith, willfully, and with a reckless disregard for Ms. Benitez's rights, and Ms. Benitez has suffered substantial economic damages as a result of such violations.

85.     Ms. Benitez has agreed to serve as the class representatives for the FLSA Collective Action and the New York Class, and is eminently qualified to serve in this capacity.

### Zion Brereton

86.     Ms. Brereton began working for Defendant as a retail representative in Valentino's showroom in July 2015, and maintained this position until on or about February 2018.

87.     Ms. Brereton worked out of Valentino's showroom, located at 11 West 42nd Street, New York, New York.

88.     From the start, Valentino misclassified Ms. Brereton as an "independent contractor" even though it knew that this classification was false. (See Exhibit C).

89.     Indeed, Valentino at all times regarded Ms. Brereton as its own employee, as it managed Ms. Brereton's daily schedule and vacation time, and gave Ms. Brereton a performance review. Moreover, Ms. Brereton was an integral part of Valentino's operations, as she was one of the three individuals who worked in the showroom with P.R. teams, and was regularly involved in photo shoots. Accordingly, Ms. Brereton was not an independent contractor who was exempt from the overtime provisions of the FLSA or the NYLL.

90.     Ms. Brereton routinely worked 5 to 10 overtime hours per week. However, as a result of Valentino's unlawful misclassification, she was never paid wages at the mandatory statutory rate for all hours over 40 in a work week.  Rather, she was paid $110.00 per day, regardless of how many hours she actually worked in a week.

91.     On or about 2016, Valentino finally acknowledged that it had misclassified Ms. Brereton as an "independent contractor," and reclassified her, making her eligible for overtime wages. (Exhibit D). However, even after Valentino corrected its classification error, it still willfully failed to compensate Ms. Brereton for the back wages that she was owed as a result of having been misclassified.

92.     Defendant's false "independent contractor" designation was not limited to Ms. Brereton alone.  Rather, this was Defendant's pattern and practice, and applied to many of its employees. A significant portion of workers designated as "independent contractors" were, in fact, Valentino employees who were entitled to overtime pay as a matter of law.

93.     Valentino also failed to provide Ms. Brereton with a wage notice or accurate paystubs in compliance with NYLL § 195(3).

94.     Specifically, Valentino did not provide Ms. Brereton with a paystub specifying her hourly rate of pay, the regular and overtime hours she worked, and all of the other information required under NYLL § 195.

95.     Likewise, Valentino did not provide Ms. Brereton with a notice upon hiring, and annually thereafter specifying her rate of pay, the basis of pay, the allowances (if any) claimed against the minimum wage (e.g., tips, meals, lodging, etc.), or the identification of the regular pay day.

96.     Defendant's failures to pay proper wages in a timely manner were made in bad faith, willfully, and with a reckless disregard for Ms. Brereton's rights, and Ms. Brereton has suffered substantial economic damages as a result of such violations.

97.     Ms. Brereton has agreed to serve as the class representatives for the New York Class, and is eminently qualified to serve in this capacity.

### FIRST CAUSE OF ACTION
### ON BEHALF OF PLAINTIFFS, FLSA PLAINTIFFS & THE NEW YORK CLASS
*(Violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201-219)*

98.     Plaintiffs, FLSA Plaintiffs, and the New York Class repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

99.     The FLSA requires an employer to pay employees the federally mandated overtime rate of one-and-one-half times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek.

100.    Valentino deliberately and systematically misclassified Ms. Benitez, and a significant portion of its workforce in the Unites States, as "exempt" to avoid paying overtime wages.

101.    Furthermore, when Valentino realized that misclassification was unlawful, and switched all wrongfully designated "exempt" workers to non-exempt status, it failed to provide Ms. Benitez, and all similarly situated class members, back wages for the time they had been misclassified. Likewise, Valentino failed to compensate Ms. Benitez, and all similarly situated class members, for the 401K benefits they had lost as a result of having been misclassified,

102.    Based on the foregoing, Valentino is liable for the unpaid overtime wages of the Plaintiffs, the FLSA Plaintiffs, and the New York Class, plus liquidated damages, costs, and reasonable attorneys' fees.

### SECOND CAUSE OF ACTION
### ON BEHALF OF PLAINTIFFS, FLSA PLAINTIFFS & THE NEW YORK CLASS
*(Violation of Labor Law §§ 650 et seq.)*

103.    Plaintiffs, FLSA Plaintiffs, and the New York Class repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

104.    Valentino violated the NYLL by regularly and repeatedly failing to compensate Plaintiffs and the New York Class for their overtime hours.

105.    Valentino deliberately and systematically misclassified Ms. Brereton, and similarly situated class members, as "independent contractors" to avoid paying overtime wages.

106.    Valentino knew that Ms. Brereton was not an "independent contractor," since they treated her an "employee" in all material ways.  Moreover, Ms. Learmont told Valentino repeatedly that many of its purported "independent contractors" were, in fact, "employees." Thus, Valentino deliberately relevant law.

107.    When Valentino realized its misclassification, it switched all wrongfully designated "independent contractor" workers to "employee" status, with eligibility for overtime pay. However,

it failed to provide Ms. Brereton, and all similarly situated class members, with back wages for the time they had been misclassified as "independent contractors."

108.    Likewise, Valentino deliberately and systematically misclassified Ms. Benitez and similarly situated class members as "exempt" to avoid paying overtime wages. Valentino knew that that its policy was unlawful, since Ms. Learmont had told Valentino repeatedly that it was wrongfully misclassifying many of its "non-exempt" workers as "exempt" to avoid paying them overtime wages. Thus, Valentino willfully and deliberately violated the law.

109.    When Valentino finally decided to remedy its misclassification decision, and switch all wrongfully designated "exempt" workers to "non-exempt" status, it still failed to provide Ms. Benitez, and all similarly situated class members, with back wages for the time they had been misclassified. Likewise, Valentino failed to compensate Ms. Benitez, and all similarly situated class members, for the 401K benefits they had lost as a result of being misclassified.

110.    Velentino's practices were willful and lasted for the duration of all relevant time periods.

111.    By reason of the foregoing, Valentino is liable for unpaid wages and overtime wages, in an amount to be determined at trial, plus liquidated damages, costs and attorneys' fees.

## THIRD CAUSE OF ACTION
## ON BEHALF OF PLAINTIFFS, FLSA PLAINTIFFS & THE NEW YORK CLASS
*(Violation of the New York Labor Law § 195 (3))*

112.    Plaintiffs, FLSA Plaintiffs, and the New York Class repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

113.    New York Labor Law §195 (3) and the NYWTPA requires that employers furnish employees with wage statements containing specific enumerated criteria on each occasion when the employer pays wages to the employee.

114.    Valentino did not issue accurate pay stubs to the Plaintiffs, in violation of New York Labor Law §195 (3) and the NYWTPA.

115.    Specifically, Plaintiffs were not given pay stubs which accurately reflected the number of overtime hours worked each and every week.

116.    Since Ms. Brereton, Ms. Benitez, and all other similarly situated class members were deliberately misclassified, and denied overtime pay, their paystubs were inaccurate as a matter of law.

117.    By reason of the foregoing, Valentino is liable in an amount to be determined at trial, plus costs and attorneys' fees.

**FOURTH CAUSE OF ACTION**
**ON BEHALF OF PLAINTIFFS, FLSA PLAINTIFFS & THE NEW YORK CLASS**
*(Violation of the New York Labor Law § 195 (1))*

118.    Plaintiffs, FLSA Plaintiffs, and the New York Class repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

119.    Pursuant to NYLL § 195(1)(a), every employer is required to provide each employee with an annual notice, setting forth, among other things, "the rate or rates of pay and basis thereof."

120.    Valentino knowingly failed to comply with this provision by failing to provide Plaintiffs and Class Members with any kind of annual notice whatsoever, let alone an annual notice meeting the requirements of NYLL § 195(1)(a).

121.     NYLL § 198(1)(b) provides that any employee not provided such notice may collect damages of $50.00 for each work day that the violation occurred or continued to occur, up to a total of $5,000.00 per employee together with costs and reasonable attorneys' fees as well as appropriate injunctive and/or declaratory relief.

122.     During the course of Plaintiffs' and Class Members' employment, Valentino consistently and willfully failed to provide them with adequate annual notices as required by New York law.

123.     Since Ms. Brereton, Ms. Benitez, and all other similarly situated class members were deliberately misclassified, and denied overtime pay, their annual notices were inaccurate as a matter of law.

124.     Based on the foregoing, Valentino is liable to Plaintiffs and Class Members in the amount of $5,000.00 per employee, plus reasonable attorney's fees and costs, and any other relief available under to NYLL § 198.

**FIFTH CAUSE OF ACTION**
**ON BEHALF OF PLAINTIFF LEARMONT**
*(Failure to Provide Reasonable Accommodation in Violation of the NYCHRL)*

125.     Plaintiff Learmont repeats, reiterates and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

126.     Plaintiff Learmont is an individual with a "disability" within the meaning of the NYCHRL.

127.     Notwithstanding Plaintiff's disabilities, with reasonable accommodations, Plaintiff Learmont was willing and able to perform the essential functions of her position as Senior Manager of Payroll and Benefits.

128.     Defendant terminated Ms. Learmont's employment only eight days after she

requested additional leave time for medical reasons.

129.    Defendant did not demonstrate an undue hardship, and had no business justification for refusing Ms. Learmont's access to reasonable accommodations, which, her doctor had ordered and which she needed as a result of her protected disabilities.

130.    Defendant's actions constitute failure to accommodate a disability in violation of the NYCHRL.

131.    Plaintiff Learmont suffered damages as a result of Valentino's failure to accommodate including compensatory damages, punitive damages, costs and attorneys' fees.

## SIXTH CAUSE OF ACTION
## ON BEHALF OF PLAINTIFF LEARMONT
*(Unlawful Retaliation in Violation of the NYCHRL and the FMLA, 29 U.S. C. § 2615(a)(2))*

132.    Plaintiff Learmont repeats, reiterates and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

133.    Plaintiff Learmont sought reasonable accommodations for her disability.

134.    Plaintiff Learmont sought protected leave pursuant to the FMLA.

135.    In late September 2019, Ms. Learmont notified her manager of the need for further accommodations, in the form of additional leave time under the FMLA.

136.    Eight days later, Ms. Learmont was unlawfully terminated by Valentino.

137.    The temporal proximity between Ms. Learmont's exercise of her rights under the FMLA and the NYCHRL, and Valentino's adverse employment action, give rise to an inference of retaliation.

138.    Valentino unlawfully retaliated against Ms. Learmont for exercising her protected rights pursuant to the NYCHRL and FMLA by baselessly terminating her employment.

139.    Defendant's alleged justification for Ms. Learmont's termination was pretextual in nature, as there was no legitimate business reason for terminating Ms. Learmont's employment.

24

140.    Plaintiff Learmont suffered damages as a result of Valentino' retaliatory conduct, including compensatory damages, punitive damages, liquidated damages, costs and attorneys' fees.

### SEVENTH CAUSE OF ACTION
### ON BEHALF OF PLAINTIFF LEARMONT
*(Unlawful Retaliation in violation of §215 of the NYLL)*

141.    Plaintiff Learmont repeats, reiterates and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

142.    Valentino intentionally, willfully, and maliciously terminated Plaintiff's employment in violation of § 215 of the New York Labor Law.

143.    Specifically, Plaintiff Learmont was a whistleblower who highlighted Valentino's wage violations under the FLSA and the NYLL, and insisted that Valentino change its policies to comply with state and federal law.

144.    Learmont's supervisor, Theresa Fortunato, was hostile toward Learmont as a result of her disclosing Valentino's violations. From the start of her tenure, Fortunato sought to demote Learmont and/or terminate Learmont's employment.

145.    When Learmont's requested additional FMLA leave, Fortunato summarily and unlawfully terminated her employment.

146.    Further, Ms. Learmont was terminated because Ms. Learmont repeatedly insisted that Valentino follow the law in all respects, but, Valentino wanted to continue underpaying its employees and violating the law with impunity.

147.    Accordingly, Valentino is liable to Ms. Learmont for reinstatement and/or front pay, back pay, compensatory damages, punitive damages, pre-judgment and post-judgment interest, costs, reasonable attorneys' fees and other appropriate relief pursuant to New York Labor Law § 215.

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE,** Plaintiffs, FLSA Plaintiffs and thehe New York Class demand judgment

against Valentino as follows:

a.   Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth above;

b.   Certifying the New York Class in accordance with Fed. R. Civ. P. 23(b)(3) or (c)(4) with respect to the claims set forth above;

c.   Designating Josefina Benitez as the Class Representative for the Collective Action under 29 U.S.C. § 216(b);

d.   Designating Josefina Benitez and Zion Brereton as the Class Representatives for the New York Class under Fed. R. Civ. P. 23(b)(3) or (c)(4);

e.   Designating Plaintiffs' counsel, Joseph & Norinsberg, LLC, as Class Counsel;

f.   Granting judgment in favor of Plaintiffs, FLSA Plaintiffs, and the New York Class, and against Defendant, and awarding the amount of unpaid overtime wages calculated at the rate of one and one-half (1.5) times Plaintiffs' regular rate, multiplied by all hours that Plaintiffs worked in excess of the prescribed number of hours per week;

g.   Awarding all other available compensatory damages to Plaintiffs, FLSA Plaintiffs, and the New York Class, including, *inter alia*, all unpaid wages, liquidated damages, and lost interest owed, under the FLSA, NYLL, and NYWPTA;

h.   Awarding liquidated and punitive damages to Plaintiff Learmont for Defendant's retaliation and failure to provide reasonable accommodations, under the NYCHRL and the FMLA;

i.   Awarding reasonable attorneys' fees and costs incurred by Plaintiffs in filing this action;

j.   Awarding pre- judgment and post-judgment interest to Plaintiffs on these damages; and

k.   Such further relief as this court deems appropriate.

Date:   New York, New York
        December 13, 2019

Respectfully submitted,

JOSEPH & NORINSBERG, LLC

By: _____

Chaya M. Gourarie, Esq.
225 Broadway, Suite 2700 New
York, New York, 10007
Tel: (212) 227-5700
Fax: (212) 406-6890
chaya@norinsberglaw.com
*Attorneys for Plaintiffs and Putative Class*


By: *Megan Goddard*
Megan Goddard, Esq.
GODDARD LAW PLLC
39 Broadway, Suite 1540
New York, New York 10006
Office: 646-504-8363
Megan@goddardlawnyc.com
*Attorneys for Plaintiffs and Putative Class*


TO:    VALENTINO U.S.A., INC.
       11 West 42nd Street
       New York, NY 10036