UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROGELIO BENITEZ, as Administrator of the
Estate of Josefina Benitez, ZION BRERETON,
ALICIA LEARMONT, JAMES CHOI and
ANDREYA CRAWFORD, on behalf of
themselves and all others similarly situated,

                              Plaintiffs,

                -against-

VALENTINO U.S.A., INC.,

                        Defendant.

19-CV-11463 (JGLC)

**OPINION AND ORDER**

JESSICA G. L. CLARKE, United States District Judge:

      Plaintiffs Zion Brereton, Andreya Crawford, James Choi, and Rogelio Benitez, in his

capacity as administrator of the estate of Josefina Benitez (collectively, "Plaintiffs"), bring this

action against their former employer Defendant Valentino U.S.A., Inc. ("Valentino") alleging

violations of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL").

Plaintiff Alicia Learmont ("Learmont") additionally brings claims against Defendant under the

New York City Human Rights Law ("NYCHRL"), Family and Medical Leave Act

("FMLA") and NYLL.

      Before the Court is (1) Plaintiffs' motion for partial summary judgment on several of

their FLSA and NYLL claims, ECF No. 154, (2) Defendant's cross-motion for summary

judgment on Plaintiffs' FLSA and NYLL claims, ECF No. 158, and (3) Defendant's motion for

summary judgment on Learmont's claims and on its first, second and fourth counterclaims

against Learmont, ECF No. 157. For the reasons set forth below, Plaintiffs' motion for partial

summary judgment is GRANTED in part and DENIED in part, and Defendant's cross-motion is

DENIED. Defendant's motion for summary judgment on Learmont's claims is GRANTED in part and DENIED in part.

## BACKGROUND

Unless otherwise noted, the following facts are not in dispute.

### I. Valentino

Valentino is a global fashion brand that designs, manufactures and markets luxury designer clothing and accessories. ECF No. 174 ("Pls.' Counter 56.1 Statement") ¶¶ 259, 305. It maintains a corporate office in New York. *Id.* ¶ 1. Valentino's New York office employs individuals in various roles and hires both full time employees and freelancers. *Id.* ¶¶ 261, 296–97. On or about December 16, 2015, Valentino entered into a contract with Pyramid Staffing Group ("Pyramid"), pursuant to which Pyramid provided Valentino with assistance in hiring and managing freelancers. *See id.* ¶ 319; ECF No. 159-10 at 68.

### II. Zion Brereton

Plaintiff Zion Brereton ("Brereton") worked as a freelancer at Valentino from July 13, 2015 until February 14, 2018. Pls.' Counter 56.1 Statement ¶¶ 318–19. For the duration of her time at Valentino, Brereton was also a full-time student at the Fashion Institute of Technology. *Id.* ¶ 324. Between July 13, 2015 and July 17, 2016, Brereton worked directly for Valentino as a Sample Management Consulting/Showroom Assistant. *Id.* ¶ 318. On January 18, 2016, Brereton became an employee of Pyramid, but continued performing the same work at Valentino. *Id.* ¶ 319. Brereton's responsibilities at Valentino included "working with Valentino's Public Relations team to send out samples to editors, magazines, and various celebrities." *Id.* ¶ 323. Valentino classified Brereton as an independent contractor, and therefore not an employee, for the entirety of her tenure. *See id.* ¶¶ 300, 318–19.

### III.   Andreya Crawford

Plaintiff Andreya Crawford ("Crawford") worked as a Corporate Customer Service Representative at Valentino from July 2015 until August 31, 2018. *See* ¶¶ 295, 297. Between July 2015 and September 1, 2015, Crawford was a freelancer at Valentino, and therefore classified as an independent contractor. *Id.* ¶¶ 295, 297, 300. Valentino offered to pay Crawford a daily rate of either $160 or, if permitted by Valentino's Finance Department, $175. *See* ECF No. 168-7 at 2. Crawford noted that she would accept the freelance position at either rate, but upon accepting the job, learned that she would be paid the $175 rate. *Id.* Beginning on September 1, 2015, Crawford became a full-time employee. Pls.' Counter 56.1 Statement ¶¶ 295, 297, 301. Some of Crawford's responsibilities included "working closely with, and serving as the primary contact for, Valentino's internal wholesale and retail teams, warehouse operations, external buyers and high-end retail boutiques to assist with transactional procedures related to product orders," and "liais[ing] directly with buyers, such as wholesale and specialty boutiques regarding orders to Valentino's global headquarters in Italy." *Id.* ¶¶ 304–05 (internal quotation marks omitted). Crawford was assigned to and managed her own customer accounts. *Id.* ¶ 306. Valentino classified Crawford, upon becoming an employee, as exempt from the FLSA's and NYLL's overtime requirements. *Id.* ¶ 311.

### IV.   James Choi

Plaintiff James Choi ("Choi") worked at Valentino as a Junior Financial Analyst from September 6, 2016 until July 20, 2018. *Id.* ¶ 277. The parties largely disagree over Choi's core responsibilities; however, it is undisputed that Choi's work involved analyzing data, financial models and reports and maintaining Valentino's financial analytics. *Id.* ¶¶ 282, 285. Valentino

classified Choi, who was a full-time employee, as exempt from the FLSA's and NYLL's overtime requirements. *Id.* ¶ 279.

### V.    Josefina Benitez

Plaintiff Josefina Benitez ("Benitez") worked at Valentino as the company's Senior Payroll and Benefits Administrator from July 11, 2016 until October 4, 2019. *Id.* ¶ 264. The parties also dispute the makeup of Benitez's duties. However, they agree that her responsibilities included "completing payroll for the company" and working with a team to create and update "Valentino's policies and procedures concerning time and attendance." *Id.* ¶¶ 266, 268. Valentino classified Benitez, who was a full-time employee, as exempt from the FLSA's and NYLL's overtime requirements. *Id.* ¶ 273.

### VI.    Alicia Learmont

Plaintiff Alicia Learmont ("Learmont") worked at Valentino as the Senior Manager for Payroll and Benefits between June 1, 2015 and October 2, 2019. *Id.* ¶ 4. Learmont's responsibilities included "complet[ing] the Company's payroll cycles for approximately 300 employees across nine states, managing benefit programs, managing leave programs (including FMLA and disability leave), and ensuring compliance with government regulations." *Id.* ¶ 10. Additionally, Learmont provided input on "job classifications, reclassifications and pay structures," and played a lead role in Valentino's 2019 re-classification of its employees. *Id.* ¶¶ 248–49.

In or around March 2019, Theresa Fortunato ("Fortunato") assumed the role of Valentino's Vice President of Human Resources ("HR") and became Learmont's supervisor. *Id.* ¶¶ 18, 20. Learmont testified that Fortunato was "hostile and aggressive" towards her and set "unrealistic work expectations." ECF No. 172-23 at 63. On April 29, 2019, Learmont asked

Fortunato if she could work remotely on two days in May 2019 and reminded Fortunato that Learmont used to work remotely two days a week prior to Fortunato's arrival. Pls.' Counter 56.1 Statement ¶ 29. Although Fortunato approved of Learmont's request, she otherwise requested that Learmont work in the office as much as possible to assist with Fortunato's acclimation to Valentino. *Id.* ¶ 30.

On May 10, 2019, Learmont's medical provider, Dr. Samantha Brooke Pozner ("Dr. Pozner") wrote a note on behalf of Learmont requesting, "[f]or medical reasons," that Learmont be allowed to "work from home 3 days/week." *Id.* ¶¶ 26, 33. Learmont testified that she began working remotely three days a week beginning in May 2019 in order to seek treatment from Dr. Pozner for anxiety and depression. *Id.* ¶¶ 33–39. She told Fortunato the same. *Id.* ¶ 39 ("In or about May 2019, Learmont told Fortunato that she needed to work remotely to attend medical appointments near her home in New Jersey to treat pre-existing depression and anxiety.").

On July 7, 2019, Learmont informed Fortunato that she would be taking a medical leave of absence and would return on October 1, 2019. *Id.* ¶ 46. On September 23, 2019, Learmont visited Dr. Pozner who noted that she was "not ready to return to work," that she remained "depressed and anxious," and recommended that Learmont take an additional two months of leave until December 1, 2019." *Id.* ¶¶ 92–93. That same day, Learmont informed Fortunato of her request for an additional two months of leave. *Id.* ¶ 96. Valentino terminated Learmont's employment on October 2, 2019. *Id.* ¶ 123.

Beginning in August/September 2019, Learmont downloaded and saved over 5,000 documents (the "Valentino Documents") from Valentino's "share drive" in preparation for a potential lawsuit. *Id.* ¶¶ 194–95, 218, 230. Learmont testified that in choosing which documents to download, she was "just trying to really grab random folders." *Id.* ¶ 198. According to

Valentino, Learmont improperly downloaded "thousands of highly sensitive and confidential documents, including dozens of employee severance agreements, Valentino's non-public tax and revenue documents, employee salary information, Valentino's non-public revenue forecasts, beneficiary designations for insurance purposes, affidavits of domestic partnership and disability questionnaires concerning non-parties." *Id.* ¶ 231. Learmont provided these materials, which included documents later deemed to be subject to the attorney-client privilege, to her personal attorneys. *Id.* ¶¶ 197, 215.

In or about July 2020, Valentino learned of Learmont and her attorneys' possession of the Valentino Documents from a pre-mediation disclosure and requested they return the documents. *Id.* ¶¶ 219–20. After Learmont's attorneys did not agree to return all the Valentino Documents, Valentino raised this issue with the Court. *Id.* ¶¶ 221–22. On October 7, 2020, the Court ordered Learmont and her counsel to return to Valentino all documents that Defendant contended were privileged (the "October 7, 2020 Order"). ECF No. 44 at 1–2. Despite the Court's Order, Valentino claimed that Learmont's counsel impermissibly relied on documents in their memorandum of law and Learmont's affirmation in support of their Motion for Conditional Class Certification that should have been returned to Valentino pursuant to October 7, 2020 Order. *See* ECF No. 61 at 2. Accordingly, on December 18, 2022, the Court ordered Learmont's counsel to "file a revised Memorandum of Law in support of their Motion for Conditional Certification, as well as a revised Plaintiff Leamont's Declaration." *Id.*

## PROCEDURAL HISTORY

Plaintiffs filed this suit on December 13, 2019 as a putative class action seeking damages from Defendant for Plaintiffs unpaid wages and overtime, as well as liquidated damages for Defendant's alleged violations of the FLSA and NYLL. *See* ECF No. 1. The Complaint also

sought damages from Valentino for Learmont's claims under the NYCHRL, NYLL and the FMLA. *See id.* Plaintiffs and Learmont filed a First Amended Complaint ("FAC") on April 22, 2020 seeking the same relief. ECF No. 18. On December 22, 2020, Plaintiffs filed a motion for conditional class certification, which the Court denied on September 20, 2021. ECF Nos. 62, 85. On May 12, 2023, the parties filed cross-motions for summary judgment, ECF Nos. 154, 158, and Defendant filed its motion for summary judgment on Learmont's claims. ECF No. 157.

## LEGAL STANDARD

To prevail on a motion for summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears the burden of demonstrating the absence of a question of material fact. *Celotex Corp.*, 477 U.S. at 22. If the movant meets its initial burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal citation omitted).

When the movant properly supports its motion with evidentiary materials, the opposing party must establish a genuine issue of fact by citing "particular parts of materials in the record" to survive the summary judgment motion. Fed. R. Civ. P. 56(c)(1)(A); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "Only disputes over facts that might affect the outcome of the suit under the governing law" preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether there are genuine issues of material fact,

a court is "required to resolve all ambiguities and draw all permissible factual inferences in favor

of the party against whom summary judgment is sought." *Terry v. Ashcroft*, 336 F.3d 128, 137

(2d Cir. 2003) (quoting *Stern v. Trustees of Columbia Univ. in City of New York*, 131 F.3d 305,

312 (2d Cir. 1997)). "The function of the district court in considering [a] motion for summary

judgment is not to resolve disputed questions of fact but only to determine whether, as to any

material issue, a genuine factual dispute exists." *Kee v. City of New York*, 12 F.4th 150, 166–67

(2d Cir. 2021) (internal quotation marks and citation omitted). "Credibility determinations, the

weighing of the evidence, and the drawing of legitimate inferences from the facts are jury

functions, not those of a judge." *S. Katzman Produce Inc. v. Yadid*, 999 F.3d 867, 877 (2d Cir.

2021) (internal citation omitted).

When evaluating cross-motions for summary judgment, the Court reviews each party's

motion on its own merits and draws all reasonable inferences in favor of the non-moving party.

*Schwebel v. Crandall*, 967 F.3d 96, 102 (2d Cir. 2020); *Coutard v. Mun. Credit Union*, 848 F.3d

102, 114 (2d Cir. 2017).

## DISCUSSION

The Court first evaluates the parties' motions with respect to Plaintiffs' wage and hour

claims, and then turns to Defendant's motion with respect to Plaintiff Learmont.

## PLAINTIFFS' WAGE AND HOUR CLAIMS

Plaintiffs move for partial summary judgment seeking a determination that: (1) prior to

December 16, 2015, Valentino misclassified Crawford and Brereton as independent contractors

instead of employees under the NYLL; (2) after Crawford became a full-time employee,

Valentino misclassified Crawford, Choi and Benitez as overtime exempt employees under the

FLSA and NYLL; (3) Valentino violated the NYLL wage notice and statement requirements with

respect to Crawford, Choi, Benitez and Brereton; (4) because Valentino failed to keep accurate time records, the Court should apply at trial the burden-shifting standard set forth in *Anderson v. Mt. Clemens Pottery*, 328 U.S. 680 (1946); and (5) the Court should calculate Plaintiffs' overtime damages at a rate of one and one-half time their regular rate of pay. *See* ECF No. 154. Defendant cross-moves for summary judgment on each of Plaintiffs' wage and hour claims. *See* ECF No. 158.

## I.     The Parties' Evidentiary Objections Are Without Merit

Before turning to the merits of the parties' motions, the Court first addresses the parties' evidentiary objections, rejecting both. In their opposition to Plaintiffs' motion for partial summary judgment, Defendant argues that Plaintiffs' motion should be denied because they failed to comply with the requirements of Federal Rule of Civil Procedure 56. ECF No. 167 ("Def. Opp.") at 13–14. Specifically, Defendant asserts that Plaintiffs violated Rule 56(c) by relying on declarations not in the record at the time Plaintiffs filed their 56.1 statement. Defendant is mistaken. Plaintiffs' 56.1 statement *does* cite to facts on the record. *See* ECF No. 155. Defendant appears to confuse Plaintiffs' 56.1 statement at ECF No. 155, with Plaintiffs' pre-motion submission at ECF No. 148-1. Because Plaintiffs' 56.1 statement was timely filed and is supported by facts in the record, the Court finds that it is properly considered at summary judgment.

Plaintiffs argue that Defendant's cross-motion relies on inadmissible evidence. ECF No. 170 ("Pls. Opp.") at 10. They contend that certain facts attested to by the declaration of Fortunato are not admissible because they are not "based on Fortunato's 'personal knowledge.'" *Id.* According to Plaintiffs, Fortunato admitted during a deposition "that she lacked personal knowledge of Plaintiffs actual job duties . . . prior to her arrival at Valentino." *Id.* (internal

quotation marks omitted). Because facts at summary judgment must be based on personal knowledge, Plaintiffs contend that the portions of Fortunato's declaration discussing Plaintiffs' jobs are inadmissible. *Id.* Plaintiffs are incorrect.

In her declaration, Fortunato attests, "I make this Declaration on my personal knowledge and/or upon review of Valentino's records." ECF No. 159-44 ¶ 1. "Affiants may testify as to the contents of records they reviewed in their official capacity." *New York ex rel. Spitzer v. Saint Francis Hosp.*, 94 F. Supp. 2d 423, 426 (S.D.N.Y. 2000); *see also Zakre v. Norddeutsche Landesbank Girozentrale*, 396 F. Supp. 2d 483, 504 (S.D.N.Y. 2005). As Valentino's former head of HR, Fortunato "was both qualified, and duty-bound, to review" Valentino's business records "before making [her] affidavit." *Bank of Am., Nat. Ass'n v. Kamico, Inc.*, No. 11-CV-5255 (MHD), 2012 WL 1449185, at *6 (S.D.N.Y. Apr. 24, 2012). Accordingly, the Court considers Fortunato's declaration.

## II.    Crawford and Brereton's Classification as Independent Contractors

Both parties move for summary judgment on the issue of whether Crawford and Brereton were properly classified as independent contractors instead of employees. However, the scope of their claims differs. Plaintiffs appear to seek a determination that Defendant misclassified Crawford and Brereton under the NYLL as independent contractors for their work prior to December 16, 2015. *See* ECF No. 154 at 1; ECF No. 177 ("Pls.' Reply") at 5 ("Plaintiffs' motion only concerns their tenure under the NYLL, specifically their work as freelancers during 2015."). In their cross-motion, Defendant argues that prior to 2016, Crawford and Brereton were properly classified as independent contractors under both the FLSA and NYLL, and that Brereton was properly classified as an independent contractor under both the FLSA and NYLL post-December 16, 2015. *See* ECF No. 158 at 2; ECF No. 163 ("Def. Br.") at 22–23.

Taking each issue in turn, the Court analyzes: (1) whether Crawford and Brereton, before 2016, were independent contractors, rather than employees, under the FLSA (raised by Defendant); (2) whether Crawford and Brereton were employees under the NYLL (raised by both parties); and (3) whether Brereton, beginning in 2016, was an employee under the NYLL and FLSA (raised by Defendant).

### A. Defendant Is Not Entitled to Summary Judgment on Plaintiffs' Claims that Pre-2016, Crawford and Brereton Were Employees under the FLSA

Defendant fails to establish as a matter of law that Crawford and Brereton were independent contractors, rather than employees, under the FLSA prior to December 16, 2015. The FLSA defines an "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). In assessing whether an individual is an employee under the FLSA, courts in the Second Circuit consider the following factors:

> (1) the degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship, and (5) the extent to which the work is an integral part of the employer's business.

*Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1058–59 (2d Cir. 1988). No factor is dispositive. Instead, the "ultimate concern is whether, as a matter of economic reality, the workers depend upon someone else's business for the opportunity to render service or are in business for themselves." *Id.* at 1059. "The existence and degree of each factor is a question of fact while the legal conclusion to be drawn from those facts—whether workers are employees or independent contractors—is a question of law." *Id.*

### 1. The Degree of Valentino's Control

To assess degree of control, courts evaluate, among other considerations, whether the alleged independent contractors had the ability to set their own schedule and determine their

income. *Agerbrink v. Model Serv. LLC*, 787 F. App'x 22, 27 (2d Cir. 2019). This is because "independence to determine [their] schedule and income are key inquiries to determining whether, as a matter of economic reality [Plaintiffs] depended upon [Defendant's] business for the opportunity to render service or was in business for [themselves]." *Id.* (cleaned up). Courts also look at whether the alleged independent contractor is permitted to work for others, because in such a circumstance, that person "is less economically dependent on his putative employer[,]" evincing a lack of control. *Saleem v. Corporate Transp. Group, Ltd.*, 854 F.3d 131, 142 (2d Cir. 2017).

Here, regarding Brereton, Valentino claims she was able "to choose her own schedule," "pursue other work and activities outside of her work for Valentino," and "was a full-time student at FIT" throughout her tenure at Valentino. Def. Br. at 23. Regarding Crawford, Defendant highlights that during the two months she worked as a freelancer, she "negotiated her daily rate with the Company," "only worked on certain projects," and "was only paid when she worked." Def. Br. at 23. Based on the evidence the parties put forth, however, the Court is unable to ascertain the degree of Valentino's control over Brereton and Crawford.

First, neither party points to evidence establishing whether Brereton and Crawford set their own schedules or controlled when they worked. Although Defendant claims Brereton (but not Crawford) set her own schedule as a full-time student, its only support for this claim is to the undisputed statement that there were times Brereton only worked 30 hours a week. Pls.' Counter 56.1 Statement ¶ 328. This fact alone does not demonstrate that Brereton chose her own schedule or controlled when she worked. Plaintiffs likewise fail to adduce any evidence as to how or who set Brereton's or Crawford's schedules, pointing only to the fact that Brereton and Crawford

submitted weekly timesheets tracking their time before payment. Pls.' Counter 56.1 Statement ¶ 372.

Second, the parties fail to put forth evidence that Brereton and Crawford set their own rate of pay. Neither party cites any facts about this with respect to Brereton. Curiously, with respect to Crawford, the parties agree that she was able to "negotiate an increase in her rate of pay." *Id.* ¶ 298. However, the evidence both parties cite for this proposition—an email exchange between Crawford and a Valentino representative—does not support this alleged fact. *See* ECF No. 168-7. Instead, the exchange shows that, when Crawford accepted her position with Valentino, a Valentino representative emailed her stating that "the daily rate" for Crawford's work "is set at $160"; however, the representative was "working to bump this up to $175." *Id.* at 2. In response, Crawford thanked the Valentino representative for trying to increase her daily pay rate and specifically agreed that she would accept the position at the lower rate if Valentino declined to increase it. *Id.* at 3. The Valentino representative later confirmed the increase of the daily pay rate to $175. *Id.* at 4. Far from establishing that Crawford "determined [her] own income," this evidence merely indicates that Valentino, on its own accord, determined that it would pay her at a slightly higher rate than it initially offered. *Agerbrink*, 787 F. App'x at 27.

Third, the facts Defendant relies on do not establish that either Crawford or Brereton worked for other companies while they worked for Valentino. Defendant only points to the undisputed fact that in 2016, Brereton took an internship at another company (not while simultaneously working for Valentino). This fact does not establish that Crawford and Brereton were permitted to work for other companies while they worked for Valentino. Furthermore, "it is not what [Plaintiffs] could have done that counts, but as a matter of economic reality what they actually do that is dispositive." *Saleem*, 854 F.3d at 142 (internal quotation marks omitted). Here,

neither Crawford nor Brereton actually worked for another company while simultaneously working for Valentino.

Based on the limited facts provided here, Defendant has not demonstrated that this factor weighs in favor of finding Plaintiffs to be independent contractors.

### 2. Crawford's and Brereton's Investment in Valentino and Opportunity for Profit or Loss

It is undisputed that Crawford and Brereton made no investment in Valentino and had no opportunity for profit or loss. Accordingly, this factor weighs in favor of an employer-employee relationship.

### 3. Degree of Skill and Independent Initiative Required

"A position that requires special skills and independent judgment weighs in favor of independent contractor status." *Meyer v. U.S. Tennis Ass'n*, No. 11-CV-6268 (ALC), 2014 WL 4495185, at *8 (S.D.N.Y. Sept. 11, 2014), *aff'd*, 607 F. App'x 121 (2d Cir. 2015) (internal citation omitted). Defendant states that Brereton's "responsibilities were specialized in nature," and describes her tasks as "assisting Valentino's Public Relations team to send out samples to editors, magazines, and various celebrities." Def. Br. at 22–23. This description does not indicate that any of Brereton's responsibilities required "special skills" or required independent judgment. Additionally, Defendant does not attempt to argue that Crawford's position as a "freelancer" for two months involved any special skills or independent judgment. Thus, this factor weighs in favor of classifying Plaintiffs as employees.

### 4. Permanence and Duration of the Employment Relationship

The fourth *Brock* factor, the permanence or duration of Plaintiffs' working relationship with Valentino, weighs in favor of independent contractor status. Although Brereton worked for Valentino for around two years, she stopped working there for several months to take an

internship with another company. Crawford worked as a freelancer for Valentino for only two months, between July and September 2015. Def. Br. at 23. Though this factor favors classifying Plaintiffs as independent contractors, courts in this district have found that this factor is "entitled to only modest weight in assessing employee status under the FLSA." *Hart*, 967 F. Supp. 2d, at 921 (collecting cases).

### 5. Extent to Which Crawford and Brereton Were "Integral" to Valentino's Business

It is unclear from the record whether Crawford and Brereton were integral to Valentino's business. Defendant merely asserts that, as an independent contractor, Crawford was not an integral part of Valentino's business because she "was not given accounts to manage." ECF No. 180 ("Def. Reply") at 9. Defendant is silent as to Brereton. Plaintiff counters in a similarly conclusory manner that Crawford and Brereton were integral because they "work[ed] side-by-side with other full-time employees under Valentino supervision." Pls.' Op. at 25. Given the parties' lack of analysis on this issue, the Court is unable to determine whether Crawford and Brereton performed work integral to Valentino's business. This factor is neutral.

### 6. Totality of the Circumstances

Based on the foregoing, the Court cannot conclude as a matter of law that Plaintiffs were in business for themselves under the economic reality test. The parties largely failed to present relevant evidence for the Court to evaluate critical factors, including degree of control and the extent to which Plaintiffs were integral to Valentino's business. Also, only one of the remaining factors—permanence and duration, which is entitled to only modest weight—weighs in favor of independent contractor status. The remaining two factors, degree of skill and investment in Valentino, weigh in favor of employee status. As such, summary judgment is denied for Defendant on this issue.

**B. Neither Party Is Entitled to Summary Judgment on Crawford's and Brereton's Pre-2015 Employment Status Under the NYLL**

Both parties move for summary judgment on whether, under the NYLL, Crawford and Brereton were employees of Valentino prior to December 16, 2015. The NYLL defines an "employee" as "any person employed for hire by an employer in any employment." NY Lab. Law § 190(2). Under the NYLL, "the critical inquiry in determining whether an employment relationship exists pertains to the degree of control exercised by the purported employer over the results produced or the means used to achieve the results." *Meyer v. U.S. Tennis Ass'n*, 607 Fed. Appx. 121, 122 (2d Cir. 2015) (quoting *Bynog v. Cipriani Grp., Inc.*, 1 N.Y.3d 193, 198 (2003)). In examining control, New York courts apply the test set forth in *Bynog v. Cipriani Grp., Inc.*, which considers the following factors: "whether the worker (1) worked at his own convenience, (2) was free to engage in other employment, (3) received fringe benefits, (4) was on the employer's payroll and (5) was on a fixed schedule." 1 N.Y.3d at 198. The *Bynog* test "examines the totality of the circumstances and no one factor is determinative as to the ultimate question of control." *Meyer*, 2014 WL 4495185, at *9.

There is insufficient evidence for the Court to evaluate whether either party is entitled to summary judgment on this issue. As described above, no party has established whether Crawford and Brereton worked at their own convenience or were on a fixed schedule. Nor did the parties address whether Crawford and Brereton received fringe benefits. The only issue on which the parties agree is that Crawford and Brereton were paid from Defendant's accounts payable and not Valentino's payroll. *See* ECF No. 150-1 ¶ 52. With the exception of that issue, neither party has presented the Court with sufficient facts to determine as a matter of law who is entitled to summary judgment on this issue. Unless "the facts are compellingly clear," the "determination whether a worker is an employee or an independent contractor usually presents questions of fact

sufficient to preclude summary judgment." *Lima v. Napoli*, No. 19-CV-1699 (JMA) (ST), 2023 WL 2429998, at *4 (E.D.N.Y. Feb. 10, 2023*), report and recommendation adopted*, 2023 WL 2731689 (E.D.N.Y. Mar. 31, 2023) (quoting *Meyer*, 2014 WL 4495185, at *5) (internal quotation marks omitted). Accordingly, the Court denies both parties' motions for summary judgment on this claim.

### C.  Brereton's Classification After December 16, 2015

Defendant also moves for summary judgment on the issue of Brereton's classification under the FLSA and NYLL following December 16, 2015, and again asserts that under both statutes she was an independent contractor. The key factual difference here is that, beginning on January 18, 2016, Brereton became an employee of Pyramid, who referred Brereton to Valentino for work. Def. Br. at 9. Plaintiffs argue that even if Brereton was an employee of Pyramid, Valentino nonetheless "functioned as" Brereton's employer, as an "employee may have multiple 'employers' simultaneously under the FLSA and NYLL." Pls.' Opp. at 26 (citing *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 66 (2d Cir. 2003)). The Second Circuit has developed a detailed, multi-factor test to determine whether an entity like Valentino should be considered a joint-employer as a matter of law. *See Zheng*, 355 F.3d at 72.

Before determining whether Valentino should be classified as a joint-employer, however, the Court first needs to determine whether Brereton was an "employee" or "independent contractor." *See Grant v. HER Imports NY, LLC*, No. 15-CV-5100 (DLI) (LB), 2018 WL 3133454, at *10 (E.D.N.Y. Feb. 16, 2018), *report and recommendation adopted*, No. 15-CV-5100 (DLI) (LB), 2018 WL 1686103 (E.D.N.Y. Mar. 31, 2018) ("Having found that material issues of fact are in dispute regarding whether plaintiff was an 'employee' or an 'independent contractor,' defendants' status as employers will only be relevant if the jury finds plaintiff was an

'employee.'"). As discussed above, the Court is unable to make such a determination as a matter of law. Thus, the Court denies summary judgment on this issue.

### III.     Crawford's, Choi's and Benitez's Entitlement to Overtime Wages

Plaintiffs move for summary judgment on the issue of whether Defendant misclassified Crawford as exempt from the FLSA and NYLL overtime requirements of the FLSA and NYLL. ECF No. 156 at 14. Defendant cross-moves seeking to establish that Crawford, Choi and Benitez were properly classified as exempt from the FLSA and NYLL overtime requirements. Def. Br. at 14. The Court analyzes each Plaintiff in turn and denies summary judgment for both parties on these claims.

Under the FLSA, "employers must pay employees overtime compensation for time worked in excess of forty hours per week." *Davis v. J.P. Morgan Chase & Co.*, 587 F.3d 529, 531 (2d Cir. 2009) (citing 29 U.S.C. § 207(a)). However, the FLSA's overtime requirements are subject to certain exemptions, including, as relevant here, for employees "employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). "Because the FLSA is a remedial act, its exemptions are to be narrowly construed, and the burden rests on the employer to prove that a particular employee is exempt from the Act's requirements." *Havey v. Homebound Mortgage, Inc.*, 547 F.3d 158, 163 (2d Cir. 2008) (cleaned up).

Valentino argues that Crawford, Choi and Benitez were exempt from overtime requirements pursuant to the so-called "administrative exemption" to the FLSA and NYLL. Def. Br. at 15. "The administrative exemption applies to those employees who (1) are compensated on a salary or fee basis at a rate no less than $455 per week[1]; (2) whose primary duty is the

---

[1] "As of January 1, 2020, this amount has been adjusted upwards to $684 per week . . . [h]owever, the Court uses the prevailing rate at the time of Plaintiff's employment." *Timberg v. Toombs*, No. 20-CV-6060 (MKB), 2022 WL 954739, at *5 n.6 (E.D.N.Y. Mar. 30, 2022).

performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and (3) whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." *Ozawa v. Orsini Design Assocs., Inc.*, No. 13-CV-1282 (JPO), 2015 WL 1055902, at *3 (S.D.N.Y. Mar. 11, 2015) (cleaned up). The Court notes that due to the fact intensive nature of determining whether an employee is exempt from overtime pay regulations, "even where there has been full discovery, courts are often reluctant to grant summary judgment based on a FLSA exemption." *Id.* (cleaned up) (quoting *Indergit v. Rite Aid Corp.*, No. 08-CV-11364 (PGG), 2010 WL 1327242, at *7 (S.D.N.Y. Mar. 31, 2010)).

### A. Crawford's, Choi's and Benitez's Salaries Meet the Requirements of the Administrative Exemption

Regarding the first administrative exemption factor, it is undisputed that Crawford's, Choi's and Benitez's salaries satisfy the first prong, as they each earned more than $455 per week. *See* Pls.' Counter 56.1 Statement ¶¶ 273, 279, 303.

### B. Crawford's, Choi's and Benitez's Work Was Related to Management or Operations

The second factor examines whether an employee's "primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers." 29 C.F.R. § 541.200(a)(2). "Regulations further explain that work directly related to management policies or general business operations consists of those types of activities relating to the administrative operations of a business as distinguished from 'production' or, in a retail or service establishment, 'sales' work." *Davis*, 587 F.3d at 532 (quoting 29 C.F.R. § 541.2(a)). Department of Labor ("DOL") guidelines clarify that "work directly related to management or general business operations includes, but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality

control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits." 29 C.F.R. § 541.201(b).

The parties do not dispute that Crawford, Choi and Benitez each performed non-manual office work. Thus, the question here is whether each Plaintiff's work related to the management or operations of Valentino or to the production of Valentino's goods. The Court finds that, based on the undisputed facts, Crawford's, Choi's and Benitez's primary duties related to management or operations, not production.

The parties agree that, as a Corporate Customer Service Representative, Crawford's primary duties included "working closely with, and serving as the primary contact for, Valentino's internal wholesale and retail teams, warehouse operations, external buyers and high-end retail boutiques to assist with transactional procedures related to product orders." Pls.' Counter 56.1 Statement ¶¶ 295, 304. Additionally, Crawford "was assigned her own customer accounts" and "liaised directly with buyers, such as wholesale and specialty boutiques." *Id.* ¶¶ 305–06. These responsibilities are administrative in nature.

The Second Circuit has "drawn an important distinction between employees directly producing the good or service that is the primary output of a business and employees performing general administrative work applicable to the running of any business." *Davis*, 587 F.3d at 535. This is an industry-specific inquiry and requires the Court to consider an employee's responsibilities within the context of their employer's primary function. For instance, in *Davis*, the Second Circuit explained that "a clothing store accountant deciding whether to issue a credit card to a consumer performs a support function auxiliary to the department store's primary function of selling clothes," and is thus an administrative employee. By contrast, an underwriter for a bank "is directly engaged in creating the 'goods'—loans and other financial services—

produced and sold by [the bank]." *Id.* Likewise in *Ozawa*, the court found that an employee's responsibilities at an interior design firm "fell on the administrative side of the production/administration line" where "none of [Plaintiff's] duties were design-related." *Ozawa*, 2015 WL 1055902, at *4.

Valentino's principal function, as a well-known global fashion brand, is the design and manufacturing of clothing and accessories. *See generally* Pls.' Br. at 2; Pls.' Counter 56.1 Statement ¶ 259. Crawford's work coordinating between Valentino's internal wholesale, retail and warehouse operations, as well as liaising with buyers is auxiliary to Valentino's primary output. Therefore, the Court finds that Crawford's primary duties are directly related to the management or general business operations of Valentino.

Although the parties contest aspects of each other's characterizations of Choi's and Benitez's responsibilities, the undisputed facts are clear that both Choi's and Benitez's primary responsibilities were administrative in nature as well. According to Plaintiffs' description, as a Junior Financial Analyst, Choi was responsible for duties including "pulling Valentino's sale data[,] . . . inputting that data into financial 'models'" and "analyzing data." Pls.' Opp at 5; Pls.' Counter 56.1 Statement ¶ 285. Likewise, Plaintiffs describe Benitez's duties as Senior Payroll and Benefits Administrator as "administer[ing] Valentino's payroll, . . . onboard[ing] new hires . . . [and] process[ing] leave requests." Pls.' Opp at 7.

Not only are Choi's and Benitez's responsibilities clearly ancillary to Valentino's primary output, but they also track the DOL's guidelines for administrative work. *See* 29 C.F.R. § 541.201(b) ("[W]ork directly related to management or general business operations includes . . . work in functional areas such as . . . accounting; budgeting[;] . . . personnel management; human resources; employee benefits . . . ."). Accordingly, the Court finds that

Choi's and Benitez's primary functions at Valentino related to management or general business operations.

### C. There Are Disputes of Material Facts Regarding Crawford's, Choi's and Benitez's Ability to Exercise Discretion

The third factor of the administrative exemption examines an employee's exercise of discretion and independent judgment with respect to matters of significance. "In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.202(a). "The exercise of discretion and independent judgment must be more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources." *Id.* § 541.202(e). However, "independent judgment is not foreclosed by the fact that an employee's work is performed in accordance with strict guidelines" or reviewed by others at a higher level. *Ozawa*, 2015 WL 1055902, at *5 (quoting *Amendola v. Bristol–Myers Squibb Co.*, 558 F. Supp. 2d 459, 476 (S.D.N.Y. 2008).

The Second Circuit has instructed that "the deployment of discretion and judgment is manifested by the authority to formulate, affect, interpret, or implement the employer's management policies or its operating practices, by involvement in planning the employer's long-term or short-term business objectives, or by the carrying out of major assignments or committing major financial resources in the conduct of the employer's business." *Pippins v. KPMG, LLP*, 759 F.3d 235, 240–41 (2d Cir. 2014) (cleaned up).

Here, the Court finds that there are disputes of material fact regarding Crawford's, Choi's and Benitez's exercise of discretion and independent judgment.

### 1. Crawford

It is undisputed that Crawford "was assigned her own customer accounts" as a Customer Service Representative. Pls.' Counter 56.1 Statement ¶ 306. Beyond that agreement, the parties dispute the judgment and discretion Crawford exercised over those accounts. According to Plaintiffs' depiction, "Crawford's job involved her complying with and following Valentino-created 'processes and procedures,'" and "'following . . . orders' rather than exercising discretion." *Id*. ¶¶ 305–06. Plaintiffs state that "Crawford's only ability to deviate [from orders given to her] was to 'change orders to align with the customer's needs.'" Pls.' Opp. at 17 (citing Pls.' Counter 56.1 Statement ¶ 306). But this too, Plaintiffs argue, did not involve any independent judgment. *Id.* Plaintiffs aver that Crawford's ability to prioritize shipments to certain of Valentino's customers also lacked independent judgment because Valentino determined its customer priority. *Id.*

According to Valentino, Crawford "routinely exercised independent discretion and judgment" as evidenced by the fact that she managed relationships with Valentino's "outside, corporate wholesale partners." Def. Br. at 20. Valentino points to Crawford's admission that she could choose what to do with customer accounts when "there was something [needed] last minute or [if there was] an emergency." Pls.' Counter 56.1 Statement ¶ 305; ECF No. 164-6 ("Crawford Deposition") at 149–50. It also cites to Crawford's statements indicating that she had "discretion to use [her] problem-solving skills" to resolve issues that arose, and that "for the most part," she was able to "resolve [issues] independently." Def. Br. at 22; Crawford Deposition at 103. Finally, Valentino highlights Crawford's exercise of discretion and independent judgment in her ability to "change shipment dates and drop dates" depending on warehouse inventory and

prioritize orders depending on the level of customer importance. Def. Br. at 8; ECF No. 159-5 at 76–77.

Here, the parties "differ on crucial factual questions concerning the makeup of [Crawford's] duties and the degree of independence [she] could exercise in carrying out those duties." *Ozawa*, 2015 WL 1055902, at *6. Accordingly, the Court finds that a genuine dispute of material fact prevents the Court from determining Crawford's level of discretion and independent judgment. Both parties' motions for summary judgment on the issue of the applicability of the administrative exemption to Crawford are denied.

### 2. Choi

The parties also disagree on Choi's exercise of discretion and independent judgment. The Court notes that, for the purpose of this analysis, it will not rely on Defendant's assertions of fact based on the Declaration of Theresa Fortunato, ECF No. 159-44, because Ms. Fortunato's description of Choi's responsibilities is based on a job description. *See Indergit*, 293 F.R.D. at 638 ("Accordingly, even where an employee's job description appears to exempt him from eligibility for FLSA overtime pay, if that employee's actual duties vary from the seemingly exempt description, such that they are engaged primarily in rote, manual, and non-discretionary tasks, he would be misclassified, despite the exempt nature of his job description.").

Defendant nonetheless credibly identifies areas where Choi exercised independent judgment and discretion. Per the testimony of Carmine Pappagallo, Choi's responsibilities included "creating an analyzing financial models and reports . . . from start to finish, including presenting the final product" and "managing the budget of one of Valentino's large entities and auditing the budgets of Valentino against that of its third-party e-commerce service provider." Pls.' Counter 56.1 Statement ¶¶ 285–87 (citing ECF No. 159-11). Additionally, Defendant

describes Choi as having operated "at a very high level of independence and autonomy." *Id.* ¶ 288 (citing ECF No. 159-11).

Plaintiffs, on the other hand, maintain that Choi exercised little discretion and independent judgment. Citing to Choi's deposition, Plaintiffs deny that Choi created financial models and instead assert that "he worked on 'models and procedures that were already in place.'" *Id.* ¶ 285 (quoting ECF No. 164-7). Though Choi's "work involved analyzing data," Plaintiffs argue that such analysis only required Choi "to pull data and input [it] into [preexisting] models." *Id.* ¶ 285 (quoting ECF No. 164-7). Further, Plaintiffs dispute Valentino's claim that Choi managed "any of Valentino's budgets." *Id.* ¶ 287.

As with Crawford, the parties' disagreement over Choi's duties and responsibilities presents a dispute of material fact. Thus, the Court denies summary judgment for Defendant on this claim.

### 3. Benitez

The parties also dispute Benitez's exercise of judgment and independence. Again, for the reasons explained in the Court's foregoing discussion with respect to Choi, the Court will not rely on Defendant's assertions of facts based on the Declaration of Theresa Fortunato. *See* ECF No. 159-44. According to Defendant, Benitez "independently implemented Valentino's new hire process, trained employees and managers regarding Valentino's policies and procedures, drafted and revised portions of Valentino's Employee Handbook . . . and performed periodic audits of Valentino's payrolls systems." Pls.' Counter 56.1 Statement ¶ 267 (citing ECF Nos. 159-2, 159-3). Additionally, Benitez "helped to develop Valentino's policies and procedures concerning time and attendance." *Id.* ¶ 268 (citing ECF No. 159-3).

Plaintiffs contend that Benitez exercised little discretion and in fact "played no meaningful role in developing any [of Valentino's] policies." Pl. Opp. at 22. Instead, Plaintiffs argue that Benitez's "role was simply that of a non-exempt 'clerical' employee," *id.*, and that she "possessed [no] independence regarding any of the tasks" Defendant listed. Pls.' Counter 56.1 Statement ¶ 267. Instead, Plaintiffs argue that her supervisors "routinely monitored, supervised, and directed Benitez's tasks while performing these duties." *Id*.

Once again, the Court finds that the parties' disagreements relate to key facts regarding Benitez's responsibilities and independence in conducting those responsibilities. Accordingly, material factual disputes preclude a finding of summary judgment for Defendant on this issue.

## IV.   Summary Judgment is Denied for Plaintiffs' Claim that Crawford, Choi and Benitez Were Misclassified Under the NYLL

Although not stated clearly, Plaintiffs appear to allege that Valentino misclassified Crawford, Choi and Benitez as exempt from overtime under the NYLL. The requirements of the administrative exemption under the FLSA and NYLL are nearly identical; however, the NYLL "includes a fourth element that the FLSA lacks: an administrative employee must also (4) regularly and directly assist an employer or perform, under only general supervision, work along specialized or technical lines requiring special training, experience, or knowledge." *Krupinski v. Laborers E. Region Org. Fund*, No. 16-CV-9923 (RJS), 2017 WL 3267764, at *3 (S.D.N.Y. July 31, 2017) (quoting 12 NYCRR § 142–2.14(c)(4)(ii)(c)) (cleaned up); *see also Suarez v. Big Apple Car, Inc.*, 806 F. App'x 19, 21–22 (2d Cir. 2020).

Because the first three factors of the NYLL administrative exemption are identical to the FLSA,[2] the Court need not analyze the fourth factor of the NYLL at this time. Disputes of material fact likewise preclude summary judgment on this claim. *See infra* Section III.

## V.    Summary Judgment is Denied on the Parties' NYLL Section 195 Claims

Plaintiffs move for summary judgment under Sections 195(1) and 195(3) of the NYLL on the basis that Valentino "either gave Plaintiffs no wage notices upon hire, or provided them with inaccurate notices that failed to reflect their regular and overtime rates of pay," and "provided them with pay stubs that included inaccurate hours and rates." Pls.' Br. at 1. Defendant cross-moves for summary judgment under the same provisions of the NYLL, asserting that they complied with the NYLL's requirements.

As both parties recognize, however, their claims under Sections 195(1) and 195(3) of the NYLL are predicated on the Court finding that Valentino misclassified Plaintiffs. *See* ECF No 177 at 11 ("Plaintiffs have asserted claims based on Defendant's *misclassifying* them, and the NYLL §§ 195(1) and [195](3) claims turn on that issue. If the Court finds Plaintiffs were misclassified, then Defendant also violated NYLL §§ 195(1) and [195](3). If the Court rules that Plaintiffs were properly classified as exempt, Plaintiffs lose on these claims. And if the Court denies both parties' motions, the issue is to be presented to the jury."); Def. Br. at 29 ("Simply

---

[2] The analysis under the FLSA and NYLL is the same here, as "[t]he New York State Department of Labor takes the position that the overtime provisions contained in the NYLL expressly incorporate the FLSA's exemptions." *Romero v. H.B. Auto. Grp., Inc.*, No. 11-CV-386 (CM), 2012 WL 1514810, at *7 (S.D.N.Y. May 1, 2012) (cleaned up); *see also Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 455 n.4 (S.D.N.Y. 2008) ("Courts regularly look to the FLSA when considering the scope of overtime exemptions under the NYLL."); *Fox v. Commonwealth Worldwide Chauffeured Transp. of NY, LLC*, 865 F. Supp. 2d 257, 268–69 (E.D.N.Y. 2012) ("Federal courts have followed the Department's guidance, applying FLSA exemptions to state Labor Law claims.").

stated, if Plaintiffs' overtime claims are unsuccessful, their NYLL §§195(1) and 195(3) claims must fail as well.").

Because the Court cannot determine whether Plaintiffs were misclassified as a matter of law, it denies both parties' motions for summary judgment on this issue.

**VI.    Assuming Plaintiffs Prove They Were Misclassified, the Standard in *Anderson v. Mt. Clemens Pottery* Shall Apply at Trial**

Plaintiffs move for summary judgment asserting that the standard set forth in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946) should be applied at trial. "In a FLSA case, it is the employee's burden to prove that he performed work for which he was not properly compensated." *McGlone v. Cont. Callers, Inc.*, 49 F. Supp. 3d 364, 370 (S.D.N.Y. 2014) (internal citation omitted). Under *Anderson*, however, "[w]hen an employer fails to maintain accurate and complete records of the hours employees work and the amounts they are paid, the plaintiff-employee need only submit sufficient evidence from which violations of the FLSA and the amount of an award may be reasonably inferred." *Andreyuk v. ASF Constr. & Excavation Corp.*, No. 19-CV- 7476 (AEK), 2022 WL 4658457, at *10 (S.D.N.Y. Sept. 30, 2022) (internal citation omitted). "In other words, if an employer keeps inaccurate or inadequate records, the plaintiff need only offer a reasonable estimate of his damages." *McGlone*, 49 F. Supp. 3d at 371. This requires a plaintiff to only "produce sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 361 (2d Cir. 2011) (quoting *Anderson*, 328 U.S. at 687).

Here, although a jury still must determine whether Defendant misclassified Plaintiffs, Plaintiffs have demonstrated that the *Anderson* standard should apply at trial should the jury reach this issue. Defendant concedes that it did not keep time records for any of the Plaintiffs, other than the time records Pyramid kept for Brereton. ECF No. 150-1 ¶¶ 64–65, 75; Pls.'

Counter 56.1 Statement ¶ 335. Keeping no time records at all is clearly inadequate. As such, assuming the jury concludes that Plaintiffs were misclassified, Plaintiffs "need only offer a reasonable estimate of [their] damages" at trial, and the "burden then shifts to [Valentino] to . . . negate the reasonableness of the inference to be drawn from the employee's evidence." *McGlone*, 49 F. Supp. 3d at 371. Accordingly, the Court grants Plaintiffs' motion in this regard.

## VII. Summary Judgment is Denied on Plaintiffs Request for Time-And-One-Half Damages

Plaintiffs' final claim asks the court to calculate Plaintiffs' overtime damages at a rate of time-and-one-half their regular rate of pay and not based on the fluctuating workweek ("FWW") method. Pls.' Br. at 26. In determining the proper rate to calculate damages, courts consider the understanding between the allegedly misclassified employee and their employer regarding the employee's compensation.

> If an employee was misclassified as exempt from overtime payments and accepted a position with the understanding that his salary was compensation for forty hours of work and no more—e.g., that the employee would work no more than forty hours per week, or agreed to work additional hours for no pay at all— then the traditional time-and-a-half method of calculating overtime would be appropriate. In the alternative, if an employee reached a clear understanding that his compensation was payment for all hours worked per week, no matter their number, then the [FWW method] would govern.

*Siegel v. Bloomberg L.P.*, No. 13-CV-1351 (DLC), 2015 WL 223781, at *7 (S.D.N.Y. Jan. 16, 2015) (citing *Klein v. Torrey Point Grp.*, 979 F. Supp. 2d 417, 439 (S.D.N.Y. 2013)).

The FWW may be applied only when each of the following five factors is met:

(1) the employee's hours fluctuate from week to week;

(2) the employee receives a fixed weekly salary which remains the same regardless of the number of hours the employee works during the week (excluding overtime premiums);

(3) the fixed amount is sufficient to provide compensation at a regular rate not less than the legal minimum wage;

(4) the employer and employee have a clear mutual understanding that the employer will pay the employee a fixed salary regardless of the number of hours worked; and

(5) the employee receives a fifty percent (50%) overtime premium in addition to the fixed weekly salary for all hours worked in excess of 40 during the week.

*Thomas v. Bed Bath & Beyond, Inc.*, 309 F. Supp. 3d 121, 130 (S.D.N.Y. 2018), *aff'd*, 961 F.3d 598 (2d Cir. 2020).

Even assuming for purposes of this motion that Plaintiffs are entitled to be paid overtime, factual disputes preclude summary judgment regarding FWW. In particular, the parties dispute whether there was any understanding that Valentino would pay Plaintiffs a fixed salary regardless of hours worked. Defendant points to offer letters showing that it paid Plaintiffs fixed salaries. *See, e.g.* ECF No. 174 at 273. Plaintiffs, on the other hand, claim Defendant provided them with additional benefits for working over forty hours in a week, including "comp days" which were paid time off, free travel, meals and sometimes cash payments. Pls.' Br. at 32. Defendant disputes that these benefits were additional compensation for overtime hours worked. It characterizes them as simply rewards for "going above and beyond, including occasionally working on the weekends or after business hours." ECF No. 167 at 25. In light of this factual dispute, the Court cannot decide this issue as a matter of law; instead, it will be one for the jury to decide should they reach this issue.

## ALICIA LEARMONT'S CLAIMS

Valentino moves for summary judgement on Learmont's claims for: (1) unlawful retaliation under the FMLA and NYCHRL; (2) failure to provide reasonable accommodation in violation of the NYCHRL; and (3) unlawful retaliation under NYLL Section 215. Additionally, Valentino moves for summary judgment on three of its counterclaims: (1) misappropriation of

privileged documents; (2) faithless servant; and (3) breach of fiduciary duty. For the reasons

stated below, Valentino's motion is GRANTED in part and DENIED in part.

## I.    Learmont's FMLA Retaliation Claim Fails as a Matter of Law

Learmont asserts that Valentino unlawfully fired her in retaliation for her request to take

additional FMLA leave. FAC at 30. Under the FMLA, an eligible employee is entitled to take up

to twelve weeks of unpaid leave in any twelve-month period due to "a serious health condition

that makes the employee unable to perform the functions of the position of such employee." 29

U.S.C. § 2612(a)(1)(D). The FMLA makes it "unlawful for any employer to interfere with,

restrain, or deny the exercise of or the attempt to exercise" that right. 29 U.S.C. § 2615(a)(1).

"Where, as here, a plaintiff alleges an FMLA retaliation claim without direct evidence of

the employer's retaliatory intent, the claim is evaluated under the burden-shifting framework" set

forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Kim v. Goldberg, Weprin,*

*Finkel Goldstein, LLP*, 862 F. Supp. 2d 311, 317 (S.D.N.Y. 2012). "To establish a *prima facie*

case of FMLA retaliation, a plaintiff must establish that: (1) she exercised rights protected under

the FMLA; (2) she was qualified for her position; (3) she suffered an adverse employment

action; and (4) the adverse employment action occurred under circumstances giving rise to an

inference of retaliatory intent." *Wells v. Achievement Network*, No. 18-CV-6588 (KPF), 2021 WL

810220, at *14 (S.D.N.Y. Mar. 2, 2021) (quoting *Graziadio v. Culinary Inst. of Am.*, 817 F.3d

415, 429 (2d Cir. 2016)) (cleaned up).

Learmont's claim of retaliation fails as a matter of law. Although it is undisputed that she

experienced an adverse employment action while she was on FMLA leave, thus satisfying

requirements one and three, Learmont cannot establish that she was qualified for her position

upon her return. "Once the FMLA leave expires, however, if the employee is unable to perform

an essential function of the position because of the continuation of a serious health condition, she is not entitled to restoration of her position." *Nagel v. Cnty. of Orange*, No. 09-CV-9960 (CS), 2013 WL 1285465, at *4 (S.D.N.Y. Mar. 28, 2013) (internal quotation marks omitted); *see also Esser v. Rainbow Advert. Sales Corp.*, 448 F. Supp. 2d 574, 580 (S.D.N.Y. 2006); 29 C.F.R. § 825.214. "Thus, an employee is not qualified for her position if she cannot return for work when her FMLA leave is exhausted." *Nagel,* 2013 WL 1285465, at *4.

Here, the undisputed evidence shows that Learmont requested an additional two months of leave in addition to her twelve weeks of FMLA leave. Pls.' Counter 56.1 Statement ¶¶ 50, 52, 96. According to Learmont, her request for the additional months of leave came after speaking with her physician, who recommended that she "continue to seek treatment." ECF No. 172-23 at 218. Because, according to Learmont, she was unable to return to Valentino at the expiration of her FMLA leave without taking additional leave to address her serious health condition, she was not qualified for her position as a matter of law.

Accordingly, summary judgment is granted in favor of Valentino on this issue.

## II.     Learmont's NYCHRL Retaliation Claim Fails as a Matter of Law

Learmont's retaliation claim under the NYCHRL similarly fails as a matter of law. The Court first notes that Learmont does not oppose Defendant's motion for summary judgment on her NYCHRL retaliation claim. "Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way." *Taylor v. City of New York*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003); *see also Robinson v. Am. Int'l Grp., Inc.*, No. 08-CV-1724 (LAK), 2009 WL 3154312, at *6 (S.D.N.Y. Sept. 30, 2009), *aff'd, 396 F. App'x 781* (2d Cir. 2010) ("[P]laintiff failed to

address defendants' arguments regarding this claim and therefore has abandoned it."). Indeed, nowhere in her opposition brief does Learmont even mention her NYCHRL retaliation claim.

Regardless, even if Learmont had not abandoned this claim, her request for additional leave was not protected under the NYCHRL. To prevail on a retaliation claim under the NYCHRL, the plaintiff must show that: "(1) [she] participated in a legally protected activity; (2) [her] employer knew of the protected activity; (3) an adverse employment action ensued; and (4) a causal connection existed between the protected activity and the adverse employment action." *Fernandez v. Windmill Distrib. Co.*, 159 F. Supp. 3d 351, 366 (S.D.N.Y. 2016) (internal citation omitted).

Learmont claims that Valentino retaliated against her for requesting additional FMLA leave. FAC at 30. However, "[t]aking FMLA leave is not a protected activity within the meaning of the NYCHRL." *Fernandez*, 159 F. Supp. 3d at 367; *see also Fasanello v. United Nations Int'l Sch.*, No. 19-CV-5281 (GHW), 2022 WL 861555, at *15 (S.D.N.Y. Mar. 23, 2022) ("Because FMLA leave is protected by federal law, not by the NYCHRL, Defendant is correct that taking FMLA leave is not a 'protected activity' under the NYCHRL."). Indeed, as Defendant points out, the NYCHRL did not consider requesting an accommodation to be "a protected activity for purposes of a NYCHRL retaliation claim" until November 2019. *Hyacinthe v. City of New York*, No. 151812/2020, 2021 WL 619320, at *7 n.6 (N.Y. Sup. Ct. Feb. 17, 2021) ("The NYCHRL has been subsequently amended to prohibit retaliation against an individual who requested a reasonable accommodation. However, this amendment took effect in November 2019 and is not retroactive."); *see also Fasanello*, 2022 WL 861555, at *16 n.5 (same).

As Learmont did not participate in protected activity for the purposes of a NYCHRL retaliation claim, her claim fails as a matter of law.

**III.     Summary Judgment is Denied on Learmont's NYCHRL Reasonable Accommodation Claim**

Disputes of material fact preclude summary judgment on Learmont's reasonable accommodation claim under the NYCHRL. In order to state a reasonable accommodation claim, "the employee must show that: (1) [she] has a disability as defined by § 8–102(16) of the NYCHRL (i.e., 'any physical, medical, mental or psychological impairment'); (2) the employer knows or should have known about the employee's disability; and (3) the employee requested a reasonable accommodation that would permit them to perform the essential functions [of her] job; and (4) the employer failed to provide reasonable accommodations that would have enabled the employee to carry out the essential functions of [her] job." *Anderson v. New York City Health & Hosps. Corp.*, No. 16-CV-1051 (GBD) (KHP), 2020 WL 2866960, at *32 (S.D.N.Y. Mar. 2, 2020), *report and recommendation adopted*, 2020 WL 1528101 (S.D.N.Y. Mar. 31, 2020). "Employers may assert that the individual could not, with reasonable accommodation, satisfy the essential requisites of the job as an affirmative defense." *Goldman v. Sol Goldman Invs. LLC*, No. 20-CV-06727 (MKV) (SN), 2022 WL 6564021, at *4 (S.D.N.Y. Aug. 5, 2022), *report and recommendation adopted*, 2022 WL 4482296 (S.D.N.Y. Sept. 27, 2022) (quoting N.Y.C. Admin. Code § 8-107(15)(b)). However, the NYCHRL "presumes all accommodations to be reasonable until proven otherwise," and thus the employer has the burden of proving that an accommodation presents an undue hardship. *Id*. (internal quotation marks omitted).

Here, the parties do not appear to dispute that Learmont informed Valentino that she "suffered from depression and anxiety," which is a disability under the NYCHRL. ECF No. 159-4 at 188–89; *see also Anderson*, 2020 WL 2866960, at *33 (finding that depression and anxiety meet the definition of "disability" under the NYCHRL). Also, neither party disputes that requesting additional leave beyond FMLA leave can, at times, be a reasonable accommodation

under the NYCHRL. *See Graves v. Finch Pruyn & Co., Inc*. 457 F.3d 181, 186 n.6 (2d Cir. 2006) ("A leave of absence 'may be a reasonable accommodation where it is finite and will be reasonably likely to enable the employee to return to work.'").

Regarding the third element, however, Valentino argues that the additional leave would not have enabled Learmont to return to work because she "had come to despise her immediate supervisor and was actively trying to avoid returning to work." ECF No. 162 at 20–21. According to Valentino's account, Learmont was never planning to return to Valentino following the conclusion of her FMLA leave. *Id.* at 22. As support, Valentino cites that Learmont had an interview with another company in August 2019, emailed a copy of her resume to an HR recruiting agency the day after she requested additional FMLA leave, and texted a Valentino co-worker on September 25, 2019 stating that "she wanted potential employers to think that she was actively working and not on a leave of absence." *Id.* at 21. Defendant further alleges that Learmont's request for additional FMLA leave was "not to treat a medical or psychological condition – but to avoid returning to work with a supervisor she disliked." *Id.* at 19.

Learmont presents a different and equally plausible account. As discussed above, Learmont testified, and submitted evidence in the form of her doctor's notes, that her physician recommended taking two additional months of leave, until December 1, 2019, to treat her depression and anxiety. Pls.' Counter 56.1 Statement ¶¶ 96, 99. Viewed in the light most favorable to Learmont, as the non-movant, and "because the NYCHRL presumes all accommodations to be reasonable until proven otherwise," the Court finds that there is a genuine dispute of material fact on this issue. *LeBlanc v. United Parcel Serv.*, No. 11-CV-6983 (KPF), 2014 WL 1407706, at *18 (S.D.N.Y. Apr. 11, 2014).

Regarding the fourth factor, it is undisputed that Valentino did not provide Learmont with additional leave following the end of her twelve weeks of FMLA leave. However, Valentino argues that Learmont's request for leave presented an undue hardship because its HR Department could not "assume all of Learmont's duties" in her absence. ECF No. 162 at 22. In response, Learmont contends that it "is [] disingenuous for Valentino to argue" that Learmont's two months of leave would cause an undue hardship when Valentino did not hire Learmont's permanent replacement until nine months after firing Learmont. ECF No. 171 at 19–20. Because Valentino's HR Department continued to function for nine months without hiring a permanent replacement, a reasonable jury could conclude that Learmont's two-month leave would not have posed an undue burden. "Given the Court's obligation to view the evidence in the light most favorable" to Learmont at this juncture, the Court concludes that Learmont presents a genuine dispute of material fact as to whether her requested leave posed an undue burden to Valentino. *Simmons v. Success Acad. Charter Sch., Inc.*, No. 21-CV-10367 (ER), 2023 WL 3304107, at *8 (S.D.N.Y. May 8, 2023) (internal citation omitted). Accordingly, Valentino's motion is denied as to Learmont's NYCHRL accommodation claim.

## IV.    Learmont's NYLL Retaliation Claim Fails as a Matter of Law

Learmont's seventh cause of action states that Valentino fired her, in violation of Section 215 of the NYLL, in retaliation for whistleblowing "Valentino's wage violations under the FLSA and the NYLL, and insist[ing] that Valentino change its policies to comply with state and federal law." FAC at 30–31. To establish a claim under Section 215, a plaintiff must show: "(1) participation in protected activity known to the defendant, like the filing of a FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Kassman v. KPMG LLP*, 925 F. Supp. 2d

453, 472 (S.D.N.Y. 2013). Section 215(2)(b) also requires a plaintiff bringing a retaliation claim

to serve notice of the action "upon the attorney general." NYLL § 215(2)(b); *see also Robledo v.*

*No. 9 Parfume Leasehold*, No. 12-CV-3579 (ALC) (DF), 2013 WL 1718917, at *7 (S.D.N.Y.

Apr. 9, 2013) ("[P]laintiffs who bring any lawsuit under the anti-retaliation provision must first

serve notice of the suit upon the State Attorney General.").

      The Court first notes that although nothing in the record suggests that Learmont provided

notice of this suit to the State Attorney General, such failure does not on its own warrant

dismissal. *See* Robledo, 2013 WL 1718917, at *8 (permitting Section 215 claim to proceed

where Plaintiff failed to provide notice to the State Attorney General). As the Court in *Robledo*

explained, "it appears that the New York Court of Appeals has not directly addressed the

question of whether the requirement that pre-suit notice be provided to the State Attorney

General should be construed as a strict 'condition precedent' to suit." *Id.* However, in "a case

involving a different state statute . . . the New York Court of Appeals allowed a case to proceed,

even in the absence of timely notice, holding that the 'requirement that notice be given is

designed solely to apprise the Attorney General that such an action was commenced so that he

would be aware of the circumstances,' and that the requirement 'may not be considered a

condition precedent to the plaintiff's cause of action.'" *Id.*; *see also Romero v. Bestcare, Inc.*, No.

15-CV-7397 (JS) (GRB), 2018 WL 1702001, at *4 (E.D.N.Y. Feb. 28, 2018), *report and*

*recommendation adopted*, No. 15-CV-7397 (JS) (GRB), 2018 WL 1701948 (E.D.N.Y. Mar. 31,

2018) ("The balance of persuasive authority favors a finding that timely notice is not a condition

precedent.").

      Regardless, Learmont's claim fails as a matter of law. Here, Learmont argues that she

made "numerous complaints to senior members of Valentino's staff about Valentino

misclassifying employees," and that her complaints were a motivating factor in Valentino's decision to terminate her. ECF No. 171 at 24–25. Learmont states that she "complained about Valentino's illegal misclassification of employees to her prior HR Director in 2015[,] . . . made repeated complaints about misclassified employees in 2016 . . . and then ultimately played a central role . . . to help Valentino's employee reclassification" in 2019. *Id.* at 25; *see also* Pls.' Counter 56.1 Statement ¶ 249.

This argument suffers from at least two flaws. First, Learmont has not established that these complaints are protected activity. To the contrary, the record indisputably demonstrates that, as an employee in the HR Department, it was Learmont's very province to provide "input on job classifications, reclassifications and pay structures." Pls.' Counter 56.1 Statement ¶ 248. Indeed, the court in *Aflalo v. Cantor Fitzgerald, L.P.* found that an HR employee notifying her employer about employee misclassifications did not constitute protected activity where it was that employee's responsibility to investigate and/or fix those practices; rather, the employee was simply doing their job. 298 F. Supp. 3d 688, 696 (S.D.N.Y. 2018).

Second, Learmont has failed to put forth evidence of a causal connection between her complaints and discharge. According to Learmont, her most recent complaint about employee misclassification occurred in 2016 and she was terminated from employment on October 2, 2019. *See* ECF No. 171 at 25; Pls.' Counter 56.1 Statement ¶ 123. This lapse in time is too attenuated to suggest an inference that Learmont's termination from employment was in response to her complaint. *See Fischman v. Mitsubishi Chem. Holdings Am., Inc.*, No. 18-CV-8188 (JMF), 2019 WL 3034866, at *6 (S.D.N.Y. July 11, 2019) (collecting cases) ("Without more, however, a nearly ten-month gap between protected activity and adverse employment action is insufficient

to support an inference of causation."). Learmont points to no other evidence establishing a causal connection.

Accordingly, the Court grants Defendant's motion with respect to Learmont's claim under Section 215 of the NYLL.

## V.       Summary Judgment is Denied on Each of Valentino's Counterclaims

The Court next considers Defendant's motion for summary judgment on its counterclaims for misappropriation of trade secrets, faithless servant and breach of fiduciary duty. The Court denies summary judgment on each claim.

### A.  Summary Judgment is Denied on Valentino's Claim for Misappropriation of Trade Secrets

Valentino's fourth counterclaim alleges that Learmont misappropriated its confidential and privileged documents. ECF No. 34 at 27. Under New York law, "[a] plaintiff claiming misappropriation of a trade secret must prove that: (1) it possessed a trade secret, and (2) defendant is using that trade secret in breach of an agreement, confidence, or duty, or as a result of discovery by improper means." *Inspired Cap., LLC v. Conde Nast*, 803 F. App'x 436, 440 (2d Cir. 2020) (internal citation omitted); *Medidata Sol., Inc. v. Veeva Sys., Inc.*, No. 17-CV-589 (LGS), 2021 WL 467110, at *2 (S.D.N.Y. Feb. 9, 2021). New York law defines a trade secret as "any formula, pattern, device or compilation of information that the owner uses in its business and that affords it an advantage over competitors who do not know or use it." *Medidata Sol.*, 2021 WL 467110, at *3 (quoting *E.J. Brooks Co. v. Cambridge Sec. Seals*, 105 N.E. 3d 301, 310 (N.Y. 2018)). "To survive summary judgment, a plaintiff asserting trade secret misappropriation must provide credible evidence that the trade secret exists and is ascertainable." *Id.*

Valentino claims that Learmont improperly downloaded "thousands of highly sensitive and confidential documents, including dozens of employee severance agreements, Valentino's

non-public tax and revenue documents, employee salary information, Valentino's non-public revenue forecasts, beneficiary designations for insurance purposes, affidavits of domestic partnership and disability questionnaires concerning non-parties." Pls.' Counter 56.1 Statement ¶ 231.

As an initial matter, although Valentino cites to a broad array of documents that Learmont allegedly improperly downloaded, to establish this claim it must demonstrate that Learmont actually used those documents. *See Lodging Sols., LLC v. Miller*, No. 19-CV-10806 (AJN), 2020 WL 6875255, at *3 (S.D.N.Y. Nov. 23, 2020) (dismissing common law misappropriation claim where plaintiff failed to demonstrate that defendant actually used the information, not just improperly acquired it). Of the thousands of documents Learmont allegedly downloaded, Valentino claims only a subset of confidential documents were allegedly improperly used in this litigation. *See* ECF No. 61 at 2. Valentino argues that Learmont and the other Plaintiffs "attempted to rely on these misappropriated documents during mediation as well as in their motion for class certification." ECF No. 162 at 34. After Defendant raised its concern regarding Learmont's and Plaintiffs' misappropriation, the Court required Plaintiffs to refile their motion for conditional class certification without relying on any of the misappropriated documents, which Plaintiffs subsequently did. *See* ECF Nos. 61–67.

Of the documents that Learmont allegedly downloaded and used in this action, Valentino fails to establish that any contain trade secrets. While Valentino's descriptions of the documents certainly suggest that they are confidential, "'confidential information' is not equivalent to 'trade secrets.'" *Elsevier Inc. v. Dr. Evidence, LLC*, No. 17-CV-5540 (KBF), 2018 WL 557906, at *5 (S.D.N.Y. Jan. 23, 2018). Indeed, "[a]lleging the existence of general categories of confidential information without providing any details to generally define the trade secrets at issue, does not

give rise to a plausible allegation of a trade secret's existence." *Id.* at *6 (cleaned up). Accordingly, the Court cannot grant summary judgment in Valentino's favor.

### B. Valentino's Claims for Breach of the Duty of Loyalty and Fiduciary Duty Also Fail

Valentino's first and second counterclaims against Learmont are for breach of the duty of loyalty under the faithless servant doctrine and breach of fiduciary duty. Valentino's motion for summary judgment is denied on each claim.

"Under the faithless servant doctrine, one who owes a duty of fidelity to a principal and who is faithless in the performance of her services is generally disentitled to recover her compensation, whether commissions or salary." *Doe v. Solera Cap. LLC*, No. 18-CV-1769 (ER), 2019 WL 1437520, at *9 (S.D.N.Y. Mar. 31, 2019) (cleaned up). Valentino argues that, while on FMLA leave, Learmont violated Valentino's policies when she "wrongfully downloaded and otherwise retained over 5,000 highly confidential and/or privileged Valentino documents, which she then disclosed outside of the Company." ECF No. 162 at 26, 29.

However, "[t]he duty of loyalty has been limited to cases where the employee, acting as the agent of the employer, unfairly competes with his employer, diverts business opportunities to himself or others to the financial detriment of the employer, or accepts improper kickbacks." *Grewal v. Cuneo*, No. 13-CV-6836 (RA), 2016 WL 308803, at *7 (S.D.N.Y. Jan. 25, 2016) (internal quotation marks omitted) (quoting *Farricker v. Penson Dev., Inc.*, No. 07-CV-11191 (DAB), 2010 WL 845983, at *2 (S.D.N.Y. Mar. 4, 2010)); *see also Primiani v. Vintage 185 Inc.*, No. 18-CV-2237 (ADS), 2019 WL 486087, at *4 (E.D.N.Y. Feb. 6, 2019). In the absence of allegations demonstrating that Learmont engaged in unfair competition, accepted improper kickbacks or diverted business from Valentino, summary judgment is denied on Valentino's counterclaim for faithless servant.

"To state a cause of action to recover damages for breach of fiduciary duty, a plaintiff must allege: (1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct." *Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 241 (2d Cir. 2020). To demonstrate damages, Defendant must show "actual harm" or injury. *Id.*

Here, the Court cannot find as a matter of law that Defendant has demonstrated actual harm. This is because Defendant's argument for damages relies on claims it has yet to prove. Defendant claims its damages flow from Valentino paying: (1) Learmont's salary while she was a faithless servant; (2) another employee's salary who helped Learmont allegedly misappropriate documents; and (3) a technical vendor who collected the alleged misappropriated documents from Learmont's personal devices. ECF No. 162 at 34–35. The first category of damages is based on Valentino's claim that it is entitled to recover compensation paid to Learmont during the period it alleges that she was a faithless servant. Because Defendant failed to demonstrate as a matter of law that Learmont was a faithless servant, the Court cannot conclude that Defendant has been harmed in this way. The second and third categories of damages arise out of Defendant's misappropriation claim, which Defendant has likewise failed to prove as a matter of law. Without any other basis for damages, and without reaching the other elements of this claim, the Court cannot determine whether Valentino has suffered actual harm from any alleged breach of fiduciary duty.

## CONCLUSION

For the reasons set forth above, Plaintiffs' motion for summary judgment at ECF No. 154 is GRANTED in part and DENIED in part. Defendant's motion for summary judgment at ECF

No. 157 is GRANTED in part and DENIED in part. Defendant's cross-motion for summary judgment at ECF No. 158 is DENIED.

The only remaining claims and counterclaims involving Plaintiff Learmont – that Defendant failed to grant her reasonable accommodation request and that she engaged in misconduct as an employee – appear to have no connection to the wage and hour claims of the other Plaintiffs in this action. As such, the Court, by separate Order, will direct the parties to show cause as to why the claims involving Plaintiff Learmont should not be severed from this action pursuant to Federal Rule of Civil Procedure 21 and dismissed for lack of subject matter jurisdiction, or, at a minimum, why the claims involving Plaintiff Learmont should not be part of a separate trial under Federal Rule of Civil Procedure 42.

The parties filed several documents under seal pursuant to a proposed protective order that the Court has yet to enter. *See* ECF No. 75. Pursuant to Rule 5 of the Court's Individual Rules and Practices in Civil Cases, the parties are ORDERED to file a letter-motion by **April 12, 2024**, seeking leave to file any documents under seal or with redactions.

The Clerk of Court is directed to terminate ECF Nos. 154, 157 and 158.

Dated:  March 29, 2024
        New York, New York

                                    SO ORDERED.

                                    *Jessica Clarke*
                                    _____

                                    JESSICA G. L. CLARKE
                                    United States District Judge